372 So.2d 1270 (1979)
MISSISSIPPI VALLEY TITLE INSURANCE COMPANY, a Mississippi Corporation, and First Memphis Realty Trust
v.
HORNE CONSTRUCTION COMPANY, INC., Roell Development Corporation and Le Roy Roell, et al.
No. 50934.
Supreme Court of Mississippi.
May 16, 1979.
Butler, Snow, O'Mara, Stevens & Cannada, W. Scott Welch, III, Taylor, Covington, Smith, Matrick & Gibson, Charles E. Gibson, III, Jackson, for appellant.
Binder, Moore & Howell, William B. Howell, Jackson, for appellees.
Before PATTERSON, BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
This case originated in the Chancery Court of the First Judicial District of Hinds County. The primary question involved is whether or not under the record of this particular case a mortgagee is entitled to a deficiency decree against the mortgagor. The lower court denied the mortgagee a deficiency judgment and it appeals. Due to the complexity and voluminous pleadings and evidence, it is necessary to discuss the pertinent parts thereof.
On November 26, 1973, appellant, First Memphis Realty Trust [hereinafter designated FMRT] entered into a construction loan agreement, deed of trust, and promissory note with Roell Development Corporation [hereinafter referred to as RDC], whereby FMRT agreed to loan the mortgagor the total sum of $1,490,000 for the construction of a motel in Jackson, Mississippi. A personal guarantee of the loan was executed by Le Roy Roell. The motel was to be constructed in two stages; first, there was construction of the room part, and then construction of the office, restaurant and lounge part. Horne Construction Company, a Mississippi Corporation, entered into an agreement with RDC to complete the second phase of the construction work for an agreed amount. Work on this part was started in the fall of 1974. As shall be discussed, difficulties arose in Horne Construction Company [hereinafter called Horne] receiving payments as agreed upon. The work was in the last stages of completion when, in October, 1975, FMRT foreclosed on its deed of trust and purchased the entire property at the foreclosure sale for the bid of $1,170,000. There were no other bidders.
*1271 The litigation in this cause was started by Horne, who filed a bill of complaint on February 23, 1976, in the chancery court against RDC, Le Roy Roell, Robert Mack Day, FMRT and Mississippi Valley Title Insurance Company, in which Horne claimed that the defendants owed him a balance of the agreed construction price. FMRT filed its answer to the Horne bill of complaint and included therein a cross-bill of complaint against RDC, Le Roy Roell and Robert Mack Day. The bill requested a decree in the nature of a deficiency decree represented by the difference between the amount of the loan plus interest and the purchase price of the property at the foreclosure sale.
At the conclusion of the evidence for all parties, the court entered into its decree awarding Horne judgment against all defendants for the balance due him for his work. The court, in its opinion and resulting decree, dismissed the cross-bill of appellant FMRT against RDC, Roell and Day. Although appeal was prosecuted and partially briefed in an attempt to reverse the decree in favor of Horne against all defendants, that part of the case was settled and is no longer before the court. In discussing the dismissal of the cross-bill of FMRT requesting a deficiency judgment, the court said:
The court has considered the pleadings, the documentary and oral evidence including approximately eight days of testimony, arguments of counsel and briefs as to facts and conclusions of law.
.....
With regard to the foreclosure sale, the Court finds that FMRT paid less than that which was owed, but the Court cannot say that the amount was unconscionably low, and under the circumstances was simply a prudent amount by FMRT. He who pays the piper calls the tune. Here, FMRT relied on the contractual agreement of Roell not to transfer title prior to the completion of the project, and where there was an intervening lien between the time that Roell did in fact transfer ownership from Roell Development to RODA, then FMRT became justified in exercising its right to foreclose to protect itself. The fact that an attorney in the same firm that represented FMRT actually did the preparation of the corporate papers would not impute knowledge necessarily to FMRT absent a showing of actual knowledge. Therefore, the Court finds that FMRT did not waive its right to exercise its right to foreclose.
On the other hand, although the amount paid at the foreclosure sale was not unreasonable so far as FMRT is concerned, under the circumstances, by the same token, there seems to be some element of high-handedness in the moving to protect their position (FMRT) which left the relative positions of the two parties, Roell and FMRT, on nothing like an equal basis. Roell had had good reason to believe that FMRT was going to pay the additional $500,000 necessary to complete the project and while he or it violated the written agreement between the parties, by virtue of the transfer of title to RODA, it seems to the Court to be something which could have been waived by FMRT but did not have to be. Under the circumstances, it would have been extremely difficult for Roell to have found alternate financing in time to prevent the foreclosure. While we cannot say the price paid at the foreclosure was too low, nevertheless, it was a price set by FMRT, and there is evidence in the record indicating that the property is worth more than the amount owed altogether, and only a short time before foreclosure, FMRT was willing to put $500,000 more into the property. Under these circumstances, it does not seem equitable for FMRT to have been allowed to move on the foreclosure basis, establish a price which left them entitled to, on the face of it, a substantial deficiency judgment and reap whatever benefits might come from that as well as owning the whole property. Therefore, the Court finds that FMRT is not entitled to a deficiency judgment or cost of collection against Roell. (Emphasis added)
*1272 At the outset we call attention to the time-honored principle that the finding of the chancellor will not be overturned unless this Court finds him to be manifestly wrong. Citations of authorities on that principle are too numerous to repeat here. Therefore, we need to condense the testimony in regard to the finding that a court of equity did not give FMRT a deficiency judgment against RDC and Roell under the facts of this particular case. A study of the authorities cited by the parties and research reveal that although there are basic principles of law involved, a decision of cases similar to that here requires a consideration on a case by case basis.
FMRT basically contends that it is entitled to a deficiency decree mainly because the chancellor stated he could not find the bid of FMRT at the foreclosure sale to be unconscionably low. We first point out that this was only one finding of the chancellor after considering, according to him, "oral evidence including approximately eight days of testimony," etc. He further found that "he who pays the piper calls the tune" and elaborated on this profound statement by finding that there was some "element of high-handedness in the moving to protect their position (FMRT), which left the relative positions of the two parties Roell and FMRT on nothing like an equal basis." He further definitely found, as seen above, that it was not "equitable" for FMRT under the facts of this particular case to receive a deficiency decree.
The principle involved here is announced in 59 C.J.S. Mortgages § 778, page 1474 (1949), as follows:
The mortgagee's right to a deficiency decree usually depends on the facts and circumstances of each case, and, since the mortgaged premises constitute the primary fund for the payment of the mortgage debt, it is only where the mortgagee has endeavored to collect it out of the land that a just judgment for deficiency can be entered. While it has been held that the power to render a deficiency decree is governed by the rules which would apply at law, it has also been held that the court has jurisdiction after a foreclosure sale to determine any intervening fact which would make it inequitable to enter a deficiency decree. Accordingly, no right to a deficiency judgment vests until plaintiff satisfies equity that it would be equitable, in the light of the sale price, to authorize a deficiency judgment. (Emphasis added).
Testimony considered by the chancellor in finding an inequity is revealed in various parts of the testimony and the evidence. There was ample testimony that in March and April, 1975, Horne was having difficulty securing his construction payments. There is ample testimony, and it is an important consideration here, as the chancellor found, that FMRT agreed with Horne that it would guarantee the payment of the funds sufficient to complete the work. This is further borne out by the fact that Horne did go ahead with the work.
The initial loan amount included the first year's interest. The record is not clear as to what other deductions were made therefrom such as discounts, etc. Beginning the latter part of 1974, interest was due on the debt payments and continued to be due until foreclosure. The proof, however, is abundant for the chancellor to find, as he did find, that in March, 1975, FMRT and Roell agreed that the former would enter into an additional agreement whereby FMRT would advance sufficient funds to complete the construction work. FMRT denied that it so agreed, but its subsequent actions greatly weakened this contention and strengthened the contention of Roell. There was abundant testimony that in April FMRT agreed to prepare a second set of contracts, deed of trust and note in the total sum of $500,000, although the proof showed that only approximately $80,000 was required to complete the project. The explanation of FMRT on this was that it wanted "to be sure" that additional advancements would be sufficient.
The testimony is ample that RDC and Roell waited from April until June for FMRT to complete the necessary papers to secure the additional funds and this was on *1273 the definite representation of the duly authorized representative of FMRT. Obviously, this was the reason Roell did not attempt to secure funds elsewhere. According to Day and Roell, the explanation for the delay in completing the additional instruments was that "it was just taking time" and that they would be forthcoming on June 24, 1975. In the meantime, the Memphis attorney for FMRT, by letter dated May 23, 1975, wrote a member of the firm representing appellant FMRT stating that it was,
[C]ontemplating the foreclosure of the lien of the deed of trust on the Quality Motel property. The trust is still meeting with Le Roy Roell concerning some sort of workout arrangement, but they do want to have someone on call familiar with the situation. It is anticipated that the negotiations will not be satisfactory and that the foreclosure will result.
We bear in mind in the previously discussed testimony that at this time and as later confirmed FMRT definitely had agreed to advance future funds to complete the work. This is evidenced by the instruments in the record that finally were presented to appellees and their attorneys on June 24, 1975, to guarantee maximum additional funds of $500,000, whereas only a small part of that amount undisputedly was needed. These instruments actually were executed by appellant and appellees. It is clear from the above discussions, therefore, that the chancellor had adequate evidence to find that appellees were misled and were relying on the assurances of FMRT that the project would be completed. The chancellor, therefore, found that the "high-handedness" of FMRT left the parties on "nothing like an equal basis."
FMRT contends that the reason it "went back" on its agreements and foreclosed the deed of trust was that in June, 1975, the property was transferred from RDC to RODA, a Mississippi corporation. There was sufficient testimony before the lower court to find that this was the agreement of the parties. The testimony of Roell and Day was that RODA was organized for the sole purpose of taking over and operating the motel. In fact, the same attorney to whom the letter from the Memphis attorney for FMRT was written in May, 1975, employing him to foreclose the deed of trust, was the same attorney who organized RODA. We mean no implication by this as nothing is shown in the record to imply unethical conduct. There is testimony in the record that on February 14, 1975, the insurance policies were issued showing RODA as the insured and that this information was conveyed to FMRT. Frank Benton, the head man for FMRT, testified that he "knew about this and expected RODA to manage the motel." Yet the sole reason given for not advancing the funds under the instruments executed on May 24, 1975, was that it had ascertained that title to the property had been transferred to RODA. Benton admitted that in September, 1974, he knew that a television lease had been entered into between RODA and the television company. He admitted receiving the lease on March 21, 1975, and admitted receiving the policy issued to RODA on the same date.
Testimony is undisputed that immediately upon being confronted by the transfer, it was offered to re-transfer the property to RDC. The reason given by FMRT in refusing this was that in the meantime a lien for $10,000 for engineering services had been placed of record. There was abundant testimony that the additional advances under the instruments of May 24, 1975, included payment of this account. Therefore, there was ample testimony for the chancellor to find that the sole reason given by appellant to foreclose [that is, that the property had been transferred] was really and truly an excuse and not a real reason that could not be corrected. The testimony of Day, an officer of RDC, was that he and Benton of FMRT had a conversation about the transfer long before it occurred and that it was agreed upon.
From the foregoing discussions, it is clear that the chancellor had ample evidence on which to find that it was not "equitable" for a court of equity to decree a deficiency *1274 decree in favor of FMRT. As stated at the outset, cases of this nature are decided on a case by case basis under equitable principles  regardless of the technical designation of that principle, whether equitable estoppel or otherwise. The primary decision is for the chancellor and his decision will not be disturbed unless manifestly wrong. We cannot say that this was the case here. It follows that the cause must be and it is affirmed.
AFFIRMED.
PATTERSON, C.J., and SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.