ON PETITION FOR REHEARING
 I.
First National Bank of Vicksburg has petitioned that we reconsider our April 5, 1989, decision holding invalid two foreclosure sales and setting aside deficiency judgments the Bank had obtained in the lower court. In our original opinion we held that the Bank's failure to appoint a disinterested trustee rendered the sales voidable. Upon rehearing we consider other stratagems deeply embedded in our law more likely effective in protecting mortgage debtors from overreaching at foreclosure. Beyond that, we respect the force of an intervening legislative enactment on the disinterested trustee requirement.
We grant the petition for rehearing, withdraw our earlier opinion, and reinstate and affirm the judgment below.
 II.
Tom D. Wansley and Julian E. Wansley are brothers and farmers. Heretofore, the Wansleys have held as co-tenants some 4,200 acres of farm land in rural Sharkey County, Mississippi. They divided their farming operations, each independently working half of the land.
For some fifteen years the Wansleys have obtained annual crop production loans through First National Bank of Vicksburg. In later years the Wansleys were unable to repay these loans in full and began renewing their unpaid debts with each new production loan. As their indebtedness mounted, the Bank required additional security — the Wansleys' land.
On February 25, 1982, Tom Wansley and his wife, Mary Ann Wansley, executed and delivered a deed of trust conveying their interest in the land to John C. Wheeless, Jr., as trustee. The instrument reflected a conveyance in trust to secure Tom's indebtedness to the Bank of $620,000.00. On April 22, 1983, Julian Wansley and his wife, Mary Frances Wansley, executed a like deed of trust, conveying their interest in the land to Wheeless, as trustee, to secure Julian's indebtedness to the Bank of $850,000.00. Each deed of trust secured future advances, and each stood as security for the Wansleys' farm-related financing through the 1984 crop year.
When their 1984 crops were harvested and sold, the Wansleys were unable to pay even a substantial portion of what each owed. The Bank declared their debts in default and directed Wheeless, as trustee, to foreclose. On March 29, 1985, Trustee Wheeless offered the Wansleys' lands at public auction. The Bank was the lone bidder, offering $500,000.00 for each brother's interest. Wheeless accepted these bids. On April 1, 1985, Wheeless executed trustee's deeds and delivered these to the Bank.
On March 8, 1986, the Wansleys filed a complaint in the Chancery Court of Sharkey County to cancel and set aside the trustee's deeds. The Bank counterclaimed, seeking to confirm its title in the foreclosed lands, plus entry of deficiency judgments *Page 1220 
against the Wansleys for the amounts of each of the indebtedness over and above $500,000.00.
At trial the Wansleys argued that the Court should void the foreclosure because Trustee Wheeless was personally financially interested in the Bank and hence was not an impartial and disinterested trustee. The proof developed that Wheeless was general counsel for the Bank and served on its board of directors. Although his stock ownership was not shown of record, Wheeless freely acknowledges that he was "one of the [Bank's] largest" shareholders.
Wheeless had also represented the Wansleys at various times over the years. He had represented Tom and Julian Wansley in regard to a corporation they had formed called "Dixie Ag". Also, Wheeless had represented the Wansleys' sons. Wheeless considered the Wansleys to be clients. He had closed loans for them and, in fact, assisted them on the deeds of trust currently in issue.
On October 17, 1986, the Chancery Court confirmed the Bank's fee simple title to the foreclosed lands as against the claims of the Wansleys. The Court dismissed the Wansleys' complaint, but found for the Bank on its counterclaim, entering deficiency judgments against Tom and Mary Ann Wansley for $493,294.00, plus interest, and against Julian and Mary Frances Wansley for $230,030.00, plus interest.
On December 31, 1987, the Bank sold the lands to L.G. Willis, Jr. and John T. Pitts. The sales price was substantially lower than $1,000,000.00, the aggregate amount credited the Wansleys upon foreclosure, creating a substantial loss for the Bank. The Bank made full warranty of title and agreed to hold the purchasers harmless from any claim of the Wansleys.
 III. A.
The field of secured credit transactions has generated some of our law's great triumphs. Sitting in his office, the lawyer as architect has created a variety of legal structures that have enabled both debtor and creditor to do much that each desires but, without law, may not do. These privately made structures have enriched our society beyond the realm of the economic. Mississippi's crop economy would have no existence without them.
The common law mortgage and its progeny may work their way only because we enforce them. As one leading authority has put it,
 The law of mortgages today has been forged between the hammer of practice and the anvil of equity. The extent to which a creditor is willing to lend money upon security is determined in part upon the interest received and in part upon the ease with which the creditor can realize upon the security to satisfy a defaulted debt.
9 Thompson on Real Property § 4650, at 2 (1958). We once thought a lawsuit necessary upon default that a creditor may realize upon his collateral. Attendant cost and inefficiency reduced the mortgage's utility. The deed of trust and the power of sale foreclosure were more perfect forms of real property secured transactions and our lawyers developed and their clients accepted these because they circumvented the trouble and expense of judicial foreclosure. See generally, G. Nelson D. Whitman,Real Estate Finance Law 536 (2d Ed. 1985).
Still we have learned better than to allow complete freedom of contract. Experience found the economic power of creditors concentrated in the hands of a few while that of debtors was diffuse. There has always been a problem of protection of debtors from unfairness and overreaching, and our efforts in that regard are found in a series of statutes, Miss. Code Ann. §§ 89-1-43, et seq. (1972 and Supp. 1989) and a century of reported judicial meanderings, often complicated by the facts of individual cases. Our pre-War predecessors held that a trustee's financial interest must be severed from the creditor beneficiary and, for that matter, the debtor's as well. See White v. Trotter, 14 Smedes 
M. 30, 42-45, 53 Am.Dec. 112 (1850), invalidating a foreclosure sale in which the trustee and debtor *Page 1221 
were father and son. We sought to protect debtors by providing that a secured creditor could not purchase at foreclosure without the debtor's consent, see Houston v. National Mutual Building Loan Association, 80 Miss. 31, 38, 31 So. 540, 541 (1902); Byrdv. Clark, 52 Miss. 623, 625 (1876), a protection which proved illusory as creditors experienced no difficulty in securing the requisite consent. Webb v. Biles, 192 Miss. 474, 487,6 So.2d 117, 120 (1942) accepts freedom of contract but holds creditors may not act an inch outside its language's limits.
In time we shifted our protective focus toward the trustee's conduct and the sale itself, rather than the status or interest of the trustee. Smith v. Beard, 128 Miss. 1, 8, 90 So. 592, 593 (1922) confirmed a foreclosure sale although the creditor's husband served as trustee and conducted the foreclosure sale at which his wife was the high bidder/purchaser. Powers v.Interstate Trust Banking Co., 163 Miss. 30, 37-38,139 So. 318, 319-20 (1932) accepted that neither the trustee's appointment as agent for service of process nor his appearance as the bank's attorney "would per se disqualify [him] as a trustee. . . ." In Hamilton v. Federal Land Bank, 184 Miss. 878, 882,186 So. 832, 833 (1939), preliminary to foreclosure, the secured creditor appointed one of its own employees as substituted trustee. The debtors attacked the subsequent sale on grounds the substituted trustee, as an employee of the creditor bank, was disqualified to act. The Court rejected the challenge, albeit without extended discussion.
This Court relied on Hamilton in Federal Land Bank of NewOrleans v. Miller, 199 Miss. 615, 25 So.2d 11 (1946) to reach a like result. Pursuant to power granted by the deed of trust, the bank had appointed W.S. Henley as substituted trustee, although Henley was the bank's agent and attorney. Henley conducted the foreclosure sale and the bank bid in the property. Debtors challenged the sale on grounds of Henley's interest. The Court dismissed the point, stating
 As will appear from Hamilton v. Federal Land Bank, 184 Miss. 878, 186 So. 832, Henley's appointment as substituted trustee is in no way affected by the fact that he was the [bank's] agent and attorney.
199 Miss. at 623-24, 25 So.2d at 12-13. Our law seemingly swung back in the other direction in Lee v. Lee, 236 Miss. 260, 267-70, 109 So.2d 870, 873-874 (1959), which inexplicably neither discusses Hamilton nor Miller, nor even Smith v. Beard.
North Carolina has been through the same struggles. In our original opinion we cited and quoted at length from Mills v.Mutual Building Loan Association, 216 N.C. 664, 6 S.E.2d 549, 551-553 (1940), a case which, in its holding and rationale, does indeed seem to condemn "interested" trustees. On further examination, we find that in Denson v. Davis, 256 N.C. 658,124 S.E.2d 827, 830-31 (1962), North Carolina has restricted Mills,
if not substantially overruled it.
 B.
In today's context, our focus has been — and is — upon assuring that the debtor is given credit toward his obligations in an amount fairly reflecting the market value of the collateral, all to the end that he may not be saddled with an inequitable deficiency judgment.
The theory of our original opinion was that holding the trustee to a strict standard of independence would promote that policy. Upon reflection, we find that (a) the independent trustee rule is practicably unworkable, particularly in our smaller and more rural communities and, (b) even if we could refine and clarify that rule, by its nature it is not capable of affording the debtor the protections he may need.
The independent trustee rule without more will little aid beleagured debtors. The trustee's independence is little consolation where the debtor winds up stuck with a large deficiency judgment. If the sale is conducted in a commercially reasonable manner, the debtor has no legitimate interest served by insisting that the trustee have no prior connection with the secured creditor. *Page 1222 
Insistence upon independence may limit severely the utility of the power of sale foreclosure in Mississippi. Lawyers commonly serve as trustees. See, e.g., Kaiser Investments, Inc. v.Davis, 538 So.2d 427, 429 (Miss. 1989). Few lawyers, particularly in small town Mississippi, are sufficiently distant from their banks that they may safely serve as trustee. If the creditor secures the services of a complete stranger, he, too, is likely to become infected with interest after the first two or three foreclosures. It would be difficult to delineate with clarity how much of a connection could void a sale otherwise held in good faith and for fair value. The trustee's potential taint will be a question of fact, the genesis of judicial challenges to many power of sale foreclosures. Third parties checking the land records may face a considerable dilemma since the land records will seldom reflect the trustee's interest. For these reasons, prudent creditors holding deeds of trust will insist on judicial foreclosures, which not only are much slower, more cumbersome and more expensive than power of sale foreclosures, but also will create additional burdens on the chancery courts. Proving the lack of any connection between the trustee and the creditor or conducting a judicial foreclosure, of course, will generate additional costs.
 Every creditor must, to some extent, measure the amount and terms of credit by the costs and delay of legal enforcement of the security. Hence, every legal protection given the debtor must, in turn, diminish the amount of credit available to him.
10 Thompson on Real Property § 5175, at 204 (1957). All of this would undermine the deed of trust and power of sale foreclosure whose efficiency we had thought the source of its genius. The well intentioned independence rule is seen inept.
None of this is really anything new. Take away Lee, which is wholly distinguishable on its facts, and there is little left to support the Wansleys' theory. To the contrary, expressions abound in our cases that may only be read as assuming the Bank's present practice permissible. Webb v. Biles, 192 Miss. 474, 478,6 So.2d 117, 120 (1942), an otherwise restrictive reading of the creditor's rights, says "Naturally, a beneficiary [creditor] will select only a person known to him to be friendly." White v.Delta Foundation, Inc., 481 So.2d 329, 331 (Miss. 1985), says a foreclosing corporate creditor may appoint its house counsel as substituted trustee, if only the corporation does so by prescribed form.
Lee v. Lee and our original opinion bottom their view upon a supposed public policy imperative that the trustee be independent and disinterested. In this state the legislature is the primary expositor of public policy and we find that in 1968, in the case of personal property secured transactions, the legislature has enacted the secured party's agents and employees may handle every aspect of repossession, foreclosure and disposition, subject only to the rule of commercial reasonableness. Miss. Code Ann. §§75-9-503, et seq. (1972). If there be a reason why "trustee" independence should be mandated where the collateral is real property, but not in the case of personal property, we do not see it. It has certainly not been suggested.
During the pendency of this case, the legislature has spoken directly to the point and has enacted as follows:
 [A]ny person may be appointed and may perform the duties of the trustee in a deed of trust, and such person shall not be disqualified nor shall the acts of such person be invalid because of the relationship of such person to any other party to the deed of trust. The beneficiary of a deed of trust or the mortgagee of a mortgage may purchase at any sale which has been made or shall hereafter be made under a power of sale, and any such sale shall not be invalid because of the relationship of such person to any other party to the deed of trust.
Miss. Laws, ch. 489, § 1(2) (1990) (effective July 1, 1990).
This enactment has no direct application to the case at bar. Because the prior state of the law reflects that the matter at issue *Page 1223 
was not free from doubt — and because we may do so without depriving the Wansleys of any rights vested in them by our prior law[1] — we accept that the legislature's words have much force today. See State Ex Rel. Pittman v. Ladner, 512 So.2d 1271, 1275-77 (Miss. 1987).
 C.
It is important that we know how we have gone astray. The deed of trust and the power of sale foreclosure arose in the all too familiar fashion. Lawyers had clients in need, and, where there is a client's will, there is a lawyer's way. Lawyers found a vehicle from another area of the law and forced it to fit, a square peg into a round hole, if you will. The trust was a recognized and ready facility.
The problem is that the typical secured land transaction bears at best a superficial analogy to a trust. The underlying reality is that the deed of trust under our law is little more than a common law mortgage with a power to convey in the event of default. The trustee is little more than an agent, albeit for both parties, and the writing prescribes his duties. SeeUnifirst Federal Savings Loan Assn. v. Tower Loan ofMississippi, Inc., 524 So.2d 290, 292 (Miss. 1986); LakeHillsdale Estates, Inc. v. Galloway, 473 So.2d 461, 465 (Miss. 1985).
As so often happens, we are asked to take seriously the (borrowed) form and to forget the substance. We are urged to treat the trustee in a deed of trust as we would any other trustee. The problem becomes acute if we start implying onto the deed of trust all of the common law rules and responsibilities regulating trusts and trustees, e.g., the trustee's duty of prudence in management and reasonable maximization of profits from the trust assets. In the deed of trust, legal title is vested in the trustee. We doubt debtors would be very happy if the trustee/titleholders sought to assume control of their land and manage it.
We sensed the point in Smith v. Beard, 128 Miss. 1, 8, 90 So. 592, 593 (1922). Courts of California have been more explicit.Lancaster Security Investment Corporation v. Kessler, 159 Cal.App.2d 649, 324 P.2d 634 (1958) correctly observes that
 A trustee under a deed of trust does not assume the important obligations which in some instances are cast upon a trustee by operation of law. [citation omitted] The trustee of a trust deed is not a trustee in the strict sense of the word. The role of such a trustee is more nearly that of a common agent of the parties to the instrument.
Lancaster, 159 Cal.App.2d at 656, 324 P.2d at 638. Stephens,Partain Cunningham v. Hollis, 196 Cal.App.3d 948,242 Cal.Rptr. 251 (1987) put the point more metaphorically: "Just as a panda is not an ordinary bear, a trustee of a deed of trust is not an ordinary trustee." Stephens, 196 Cal.App.3d at 955, 242 Cal.Rptr. at 255.
 D.
The price obtained at foreclosure formerly fixed the value of the collateral for purposes of computing a possible deficiency. If the independent trustee rule may be seen as one necessary and requisite to assuring a fair price at foreclosure, we should enforce it. A series of decisions over the past ten years make clear that the proffered rule may not be so seen, that it is, at best, superfluous!
Mississippi Valley Title Insurance Co. v. Horne ConstructionCo., Inc., 372 So.2d 1270, 1272 (Miss. 1979) holds that the creditor has no right to a deficiency judgment until he satisfies the court
 that it would be equitable, in the light of the sale price, to authorize a deficiency judgment.
We added to that idea in Lake Hillsdale Estates, Inc. v.Galloway, 473 So.2d 461, *Page 1224 
465 (Miss. 1985). There we gave lip service to the idea that mere inadequacy of price will not operate to set the sale aside, unless the consideration is so grossly inadequate as to shock the conscience of the Court. Lake Hillsdale, 473 So.2d at 465. On the separate question raised by the creditor's suit for a deficiency, however, Lake Hillsdale held that
 something more than a difference between the price paid at the foreclosure and the amount of the indebtedness must be demonstrated before the mortgagee is entitled to a deficiency judgment . . . Though we have concluded above that the price paid at the foreclosure sale was not so inadequate as to require setting aside the sale, we cannot conclude that the value of the property thereby obtained is insufficient to satisfy the indebtedness of the mortgagor.
Lake Hillsdale, 473 So.2d at 466. We reversed for a determination of value as a predicate to the propriety of the creditor obtaining a deficiency judgment.
Haygood v. First National Bank of New Albany, 517 So.2d 553
(Miss. 1987) is to like effect. Haygood recites the inadequacy rule, again limiting it to the context of whether the foreclosure sale should be set aside. For deficiency judgment purposes,Haygood states:
 The legal determination of the adequacy of the purchase price depends upon establishment of fair market value [citing Lake Hillsdale].
Haygood, 517 So.2d at 556. This is but another way of saying that, before we will respect them for deficiency purposes, terms of a foreclosure sale must be commercially reasonable.
These same principles were recognized in Rankin County Bank v.McKinion, 531 So.2d 822, 825 (Miss. 1988). The more important point in Rankin County is that the foreclosing creditor must act with dispatch in proceeding for a deficiency judgment.Rankin County holds that the creditor has but one year after foreclosure to seek its deficiency and rejects the argument that the one-year statute of limitations does not begin to run until the creditor has, in fact, sold the property to a third party.But compare Miss. Code Ann. § 75-9-505 (1972). In Federal LandBank of Jackson v. Wolfe, 560 So.2d 137, 140-42 (Miss. 1989), we recognized and reaffirmed all of these principles and beyond that accepted that the foreclosing creditor was entitled to fair treatment as well.
In this view the Wansleys' insistence upon independence of the trustee is seen as something of an anachronism, for the development of the law protecting debtors should be in the vein of strengthening and clarifying the rule of Horne Construction,Lake Hillsdale, Haygood, McKinion and Wolfe. Commercial reasonableness has become our touchstone.
 E.
There is no need to modify or dispatch the old rule to the effect that a foreclosure sale may not be set aside unless the sales price is so inadequate as to shock the conscience of the Court "or to amount to fraud." Haygood, 517 So.2d at 556; LakeHillsdale, 473 So.2d at 465; Peoples Bank Trust Co. v. L TDevelopers, Inc., 434 So.2d 699, 709 (Miss. 1983); CentralFinancial Services, Inc. v. Spears, 425 So.2d 403, 405 (Miss. 1983). This rule concerns only the legality of the foreclosure sale for purposes of vesting title to the collateral in the creditor or other purchaser at foreclosure. It has nothing whatsoever to do with the separate and distinct question of what, if any, deficiency judgment may be allowed.
Effective in 1968, the legislature enacted, with respect to personal property held as collateral in secured transactions, that
 disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place and terms, must be commercially reasonable . . . The secured party may buy at any public sales; and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale. *Page 1225 
Miss. Code Ann. § 75-9-504(3) (1972). [Emphasis supplied]
We see no reason on principle why a similar rule should not govern disposition of real property held as collateral and foreclosed upon. Subject to our otherwise governing statutes, we declare that, if the secured creditor is authorized to foreclose by power of sale, after the debtor's default and upon compliance with the deed of trust or other instrument, the secured creditor may sell any or all of the real estate that is subject to the security interest in its then condition or after any reasonable rehabilitation or preparation for sale. Every aspect of thesale, including the method, advertising, time, place and terms,must be commercially reasonable. This is an objective standard.
We apply these premises to the case at bar. We find that the Bank bid in the auctioned interest at each sale. Thereafter, the Bank credited Julian Wansley and Tom Wansley each with $500,000.00 following foreclosure, even though at that time the Bank had not realized so much as a penny out of the property. We find nothing in the proceedings before us suggesting that these sums did not fairly reflect the value of each Wansley's interest at the time, nor are we told of any other inadequacy in the foreclosure process. In sum, the Bank's behavior has been commercially reasonable, notwithstanding Wheeless' interests.
We have considered the other issues the Wansleys have tendered on appeal and find that none merit discussion nor require reversal.
PETITION FOR REHEARING GRANTED; AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, SULLIVAN, PITTMAN and BLASS, JJ., concur.
HAWKINS and DAN M. LEE, P.JJ., dissent without written opinion.
ANDERSON, J., not participating.
[1] There is nothing in our pre-July 1, 1990, statutory law requiring independence. See Miss. Code Ann. §§ 89-1-53 -55 (1972). The statute relied on by the Wansleys, Miss. Code Ann. §11-5-101 (1972), applies only to judicial foreclosures. Even if that statute applied to power of sale foreclosures, a bit of straining would be required to make the language proscribe the sort of trustee here at issue.