**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-CA-02321-SCT**

*FREDDIE DABNEY HATAWAY, CO-EXECUTOR OF*
*THE ESTATE OF ELOISE W. DABNEY*

*v.*

*ESTATE OF MARY DABNEY NICHOLLS,*
*DECEASED, DAVID H. DABNEY AND ELOISE*
*DABNEY LAUTIER*

**ON MOTION FOR REHEARING**

DATE OF JUDGMENT:                    09/10/2003
TRIAL JUDGE:                         HON. WILLIAM G. WILLARD, JR.
COURT FROM WHICH APPEALED:           WARREN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:              PRO SE
ATTORNEY FOR APPELLEES:              WILLIAM M. BOST, JR.
NATURE OF THE CASE:                  CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                         AFFIRMED - 02/17/2005
MOTION FOR REHEARING FILED:          11/12/2004
MANDATE ISSUED:

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2.     This dispute concerns the partition sale of four parcels of commercial land by heirs of the Estate of Eloise W. Dabney. Three heirs ("Petitioners") filed a Complaint for Partition with the Chancery Court of Warren County. A consent judgment was reached with the fourth

heir, and a special master was appointed to conduct a sale to the highest bidder for cash. There were two bidders at the sale: the fourth heir and an attorney representing a third-party buyer. This same attorney also represented the three heirs. The fourth heir submitted a bid of $72,000; however, the special master rejected this bid finding that the "letter of guarantee" submitted by the fourth heir from Bancorp South was "not for cash." The property was then sold to the other bidder for $60,000 by way of the attorney's trust account check. The chancery court subsequently granted summary judgment and confirmed the sale.[1] The fourth heir has filed this appeal. For the reasons discussed below, we affirm the judgment of the Chancery Court of Warren County.

## FACTS AND PROCEEDINGS

¶3. The parties in the present case are the same parties identified in the will contest case of *In re Estate of Dabney*, 740 So.2d 915 (Miss. 1999). In *Dabney*, this Court affirmed a judgment finding invalid the 1996 Last Will and Testament of Eloise W. Dabney based on misrepresentation, undue influence and fraud. The 1996 will excluded one of Mrs. Dabney's daughters, Freddie Dabney Hataway, the appellant in this case. Because the 1996 will was invalidated, Mrs. Dabney's 1987 will was admitted to probate. The 1987 will, among other things, left four parcels of land to Mrs. Dabney's four children: Hataway and the three

---

[1]Although one of the chancellors in the Ninth Chancery Court District (of which Warren County is a part) entered all necessary orders prior to the special master's sale, these chancellors eventually recused themselves and requested this Court to appoint a special judge to hear this case. By order dated April 17, 2003, the Chief Justice appointed the Honorable William G. Willard, Jr., a chancellor in the Seventh Chancery Court District, to preside over the proceedings in this case, which included ruling on the motion for summary judgment and confirming the special master's sale.

2

appellees – Mary Dabney Nicholls, David Hunt Dabney, and Eloise Dabney Lautier. Those four parcels of land are the subject of this litigation.

¶4. The Complaint For Partition against Hataway was filed by Mary, David, and Eloise on October 24, 2000. Hataway filed a pro se Answer, and then through counsel filed an Amended Answer. Mary died during the course of the underlying proceedings, and Mary's daughter, as Administratrix of her Estate, was substituted as a party. Under the 1987 Will, Hataway was to be appointed co-executor in the event that either David or Mary could not continue to serve as executor. However, there is no indication that Hataway was appointed as co-executor. David, as co-executor of Mrs. Dabney's Estate, joined the litigation as a plaintiff.

¶5. The Petitioners filed a Limited Appraisal/Summary Report of Land and Improvements, performed by Bottin Consulting Group. This appraisal opined that the two parcels must be sold together since one parcel had a building with no available parking and the other parcel was a vacant lot. The value of both parcels was placed at $65,000. A consent judgment was reached by the parties, and the trial court appointed a special master to conduct a partition sale of the properties. The order provided that the property was to be auctioned to the highest bidder for cash. The order also permitted Hataway to have an independent appraisal performed. James E. Craig reviewed Bottin's appraisal and disagreed as to the need to sell the parcels together and as to fair market value. Craig valued both parcels at $90,000, or if immediate liquidation were required, $72,000.

3

¶6.   After notice as provided by law, the sale of the first two parcels was conducted on November 7, 2002.   At the sale, Hataway submitted a "letter of guarantee" from BancorpSouth (Bank) addressed to the special master, which provided, in part:

> Our customer, Ms. Freddie Hataway, has requested this letter of guarantee from BancorpSouth in order to support her bid for the above referenced auction.
>
> The bid is not to exceed $72,000 and we guarantee that the good funds will be made available upon receiving clear title to the above referenced parcels.

The letter was signed by Mark T. Buys, the Bank's Executive Vice President. The second bidder, William L. Shappley, demanded to see the letter.   Shappley was the attorney representing the Estate and the petitioners, and was also bidding as an agent for the ultimate purchaser, Jamal Khouri.   The special master found that the letter was not the equivalent of cash and refused to accept Hataway's bid.   Shappley, as agent for a then-undisclosed buyer, purchased the property for $60,000.   Payment was made by an un-certified trust account check from Shappley's law firm.   Hataway objected to the sale, but did not post the bond pursuant to Miss. Code Ann. § 11-5-109.

¶7.   The trial court then granted the Petitioners' motion for summary judgment and confirmed the partition sale. Hataway filed her response to the summary judgment four days after the order was filed.   The cover letter from the attorney explained that there was "some misunderstanding as to the briefing schedule we agreed upon" and requested that the trial court alternatively consider the response as a motion to amend the judgment pursuant to Miss. R. Civ. P. 59.   This response included an affidavit from Hataway, a copy of a contract for the sale of the two parcels for $65,000 between David and Jamal Khouri dated May 10, 2002, and

4

addenda dated May 15 and 20, 2002, reducing the price to $60,000. Hataway's Rule 59 motion was denied, and this appeal followed.

## ANALYSIS

¶8.     Hataway raises three issues: (1) Whether Dabney, as co-executor of the Estate, had lawful authority to act for the Estate to the exclusion and over the objection of Hataway; (2) whether Hataway's bid was for cash; and (3) whether the trial court erred in granting summary judgment confirming the partition sale.     Additionally, in her argument discussing the appropriateness of summary judgment, Hataway discusses the propriety of Shappley appearing at the auction in a dual capacity, that is as the attorney for the sellers and as agent for the buyer. Because the first issue and the issue of Shappley appearing at the auction in a dual capacity were not raised before the chancery court, they will not be addressed here on appeal. *Ellis v. Ellis*, 651 So.2d 1068, 1073 (Miss. 1995); *Bender v. North Meridian Mobile Home Park*, 636 So.2d 385, 389 (Miss. 1994); *Parker v. Miss. Game & Fish Comm'n*, 555 So.2d 725, 730 (Miss. 1989).

¶9.     This Court employs a de novo standard in reviewing a trial court's grant of summary judgment. *Stewart v. Hoover*, 815 So.2d 1157, 1159 ¶ 6 (Miss. 2002) (citing *O'Neal Steel, Inc. v. Millette*, 797 So.2d 869, 872 (Miss. 2001)).  In conducting a de novo review, we look at all evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. *Id.* (citing *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So.2d 845, 847 (Miss. 2001) and *Aetna Cas. & Sur. Co. v. Berry*, 669

So.2d 56, 70 (Miss. 1996)). This evidence must be viewed in the light most favorable to the party against whom the motion for summary judgment has been made. *Id.* (citing *Leslie v. City of Biloxi*, 758 So.2d 430, 431 (Miss. 2000)).

¶10.    The Petitioners argue that Hataway failed to preserve her objection to the confirmation of the sale by failing to post the statutorily required bond under Miss. Code Ann. § 11-5-109 (Rev. 2002) which states:

> The party who objects to a sale under a decree because of the inadequacy of the bid, or any person interested therein, may prevent the confirmation thereof by entering into a bond in a penalty equal to double the amount of the bid, with sufficient sureties, to be approved by the court or clerk, payable to the opposite party, conditioned to pay all costs of a resale, and that the property shall bring thereat an advance of not less than twenty per centum upon the bid, exclusive of the cost of resale.

Hataway counters that this statute applies only to an objection regarding "the inadequacy of the bid" and not the unlawful handling of the bid process. Hataway argues that she is challenging the process of the sale and the fact that her "bid" was rejected. The trial court did not require Hataway to post bond in support of her objection or even address this issue. The adequacy of the bids is not at issue. Instead, the issue is whether the letter constitutes an acceptable bid.

¶11.    In deciding whether the summary judgment confirming the partition sale was proper, we must first review Hataway's letter from the Bank. The parties had entered into a consent judgment as to the sale of parcels 1 and 2 "to the highest bidder for cash." Hataway contends that her "letter of guarantee" was sufficient under Miss. Code Ann. §§ 75-5-101 to -118 (Rev. 2002) and that it was "no less 'cash' than the $60,000 uncertified trust account check submitted by Shappley."

6

¶12.	A letter of credit is defined as "a definite undertaking that satisfies the requirements of Section 75-5-104 by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value."	Miss. Code Ann. § 75-5-102(10).	The "standard practice of financial institutions" that issue letters of credit shall be observed.	Miss. Code Ann. § 75-5-108(e).[2]	Hataway argues that the Bank's letter clearly meets the requirements of the Uniform Commercial Code and that upon receipt of the deed, the Bank would have been required to pay up to $72,000.	Hataway also argues that this raises an issue of material fact sufficient to defeat summary judgment, relying on *Lyle v. Mladinich*, 584 So.2d 397, 398 (Miss. 1991) (holding that a "trial judge's decision is reversed if a triable issue of fact exists.").

¶13.	The Petitioners rely on *Hendry Construction Co. v. Bank of Hattiesburg*, 562 So.2d 100 (Miss. 1990), to argue that the letter presented by Hataway was not the same as cash.	In *Hendry*, a construction company brought an action against the Bank of Hattiesburg for alleged wrongful refusal to recognize an alleged letter of credit from Deposit Guaranty National Bank. The president of Hendry Construction received a letter addressed solely to him from Deposit Guaranty National Bank, and he assumed it was a letter of credit.	The letter provided that

---

[2]Miss. Code Ann. § 75-5-108(e) states in full:

An issuer shall observe standard practice of financial institutions that regularly issue letters of credit. Determination of the issuer's observance of the standard practice is a matter of interpretation for the court. The court shall offer the parties a reasonable opportunity to present evidence of the standard practice.

Farmers Home Association had approved a loan to the party contracted to do the construction work for Hendry and that "subject to certain conditions that [the construction company] must meet in order for the loan to be funded" and a "loan closing", then when "all conditions have been met . . . a check in the amount of $275,000 will be made payable to Hendry Construction Company." Hendry delivered the letter to the Bank of Hattiesburg to borrow money to complete the construction. The Bank loaned $138,543 but then refused to advance additional funds. Hendry sued the Bank of Hattiesburg for refusal to recognize the letter of credit and loan additional funds. This Court found that the letter was not a "letter of credit" and further that it was not even addressed to the Bank. *Id.* at 101-02. Thus, the Petitioners argue that the letter in the instant case is analogous to the *Hendry* letter.

¶14. We find that *Hendry* is distinguishable from today's case. First, the *Hendry* letter was not a direct promise to pay the addressee. Second, the addressee of that letter was Hendry himself, not the bank. Here, the letter specifically stated that the Bank "guarantee[d] that the good funds will be made available upon receiving clear title to the above referenced parcels." Additionally, the letter was specifically addressed to the special master. Had the special master accepted the letter *and delivered clear title*, the Bank would have been required to make payment in an amount up to $72,000. Miss. Code Ann. § 75-5-103(a). The payment of any commitment fee is of no consequence as "consideration is not required to issue, amend, transfer or cancel a letter of credit, advice or confirmation." Miss. Code Ann. § 75-5-105.

¶15. However, while we agree that under certain circumstances, the Bank's letter would as a matter of fact and law be considered a bid for cash, the special master was not required to

8

accept the letter since the letter contained a condition which could not be met. In a typical unforced real estate transaction with a willing buyer and seller, it would be expected that a letter of credit from a lender would contain a condition at least similar to the letter before us so as assure the lender that it received a first deed of trust on the subject property. However, when trustees or special commissioners or masters are conducting public sales, they may convey only such title as is vested in them in that capacity.[3] That power and authority quite often will render them incapable of conveying "clear title," whatever that means. For example, a trustee who is foreclosing on a second deed of trust, is most assuredly going to be legally incapable of conveying "clear title" to the purchaser at the foreclosure sale since the trustee would be conveying title to the purchaser subject to the first deed of trust.

¶16. Additionally, a special commissioner or master conducting a judicially ordered sale must do so in accordance with the judge's order. The trial court may order that the subject real estate be sold subject to or free of existing encumbrances. *O'Neill v. O'Neill*, 551 So.2d 228, 232 (Miss. 1989). In its judgment appointing a special master and directing a partition sale, the chancery court ordered, inter alia, that the special master deliver a special master's deed to the "highest bidder for cash." Nowhere in this judgment or any other order did the chancery court direct the special master to deliver "clear title" to the successful bidder.[4] The special master dutifully performed her duties pursuant to the chancery court order. She published the

---

[3]See *Wansley v. First Nat'l Bank of Vicksburg*, 566 So.2d 1218 (Miss. 1990); *Peoples Bank & Trust Co. v. L & T Developers*, *Inc*., 434 So.2d 699, 708 (Miss. 1983).

[4]We will assume here arguendo that "clear title" means "free of encumbrances."

"Special Master's Notice of Sale," which stated inter alia that she would "[convey] only such title with which I am empowered by the [chancery court]." She conducted the sale. She filed her Report of Special Master. She delivered her Special Master's Deed.

¶17. It is interesting to note that included in the exhibits attached to the motion for summary judgment was a sworn affidavit from the Bank's vice president who had submitted the "letter of guarantee" for Hataway. In this affidavit, he stated, inter alia:

> That letter was an expression that [the Bank] had made a conditional loan commitment to Mrs. Hataway, although no commitment fee was paid and [the Bank] was not bound to make the loan. If the conditions had been met, *that is clear title had been assured*, we would have *probably* made a secured loan up to the amount stated in the letter. *The letter was not a letter of credit or other cash equivalent.*

(emphasis added).

¶18. A chancellor is afforded "wide discretion" in fact finding in determining whether to confirm the special commissioner's report and to authorize the special commissioner's deed. *Griffin v. Campbell*, 741 So.2d 936, 938 (Miss. 1999). From the record before us, it is abundantly clear that the chancellor quite appropriately granted summary judgment, which had the practical effect of confirming the special master's sale which was conducted consistent with the chancellor's order. Without doubt, there was no disputed fact issue, and the chancellor properly applied the appropriate law to the facts of the case.

## CONCLUSION

¶19. Hataway's letter from BancorpSouth stated that the bank would make available funds not to exceed $72,000 "upon receiving clear title" to the subject property – a condition which the

10

special master could not meet and a condition which was not required by the chancellor in this judicially ordered sale. Thus, for the reasons stated, the chancellor did not err in confirming the sale of the subject property to the Petitioners for the sum of $60,000. Therefore, the judgment of the Chancery Court of Warren County is affirmed.

¶20. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**