**LOL FINANCE CO., Plaintiff**

v.

**EASY MONEY CATFISH COMPANY; Mitchell Pearson; Patricia M. Pearson; Robert N. Pearson; Georgia S. Pearson; and Kevin Pearson, Defendants.**

**Civil Action No. 4:09cv23–MS.**

United States District Court,
N.D. Mississippi,
Greenville Division.

Feb. 2, 2012.

Judson Morgan Lee, Judson M. Lee, PLLC, Madison, MS, for Plaintiff.

John H. Cox, III, Cox Law Office, Greenville, MS, Paul Scott Phillips, Campbell Delong, LLP, Greenville, MS, for Defendants.

### *ORDER*

MICHAEL P. MILLS, Chief Judge.

This cause comes before the court on the renewed motions of defendants Easy

---

Money Catfish Company, Robert N. Pearson, Georgia S. Pearson, Kevin L. Pearson, Patricia M. Pearson, and Mitchell Pearson (collectively "Defendants"), pursuant to Fed.R.Civ.P. 56, for summary judgment. Plaintiff LOL Finance Co. ("LOL") has responded in opposition to the motions, and the court, having considered the memoranda and submissions of the parties, concludes that the motions are well taken and should be granted.

This is a breach of contract case in which plaintiff seeks to recover for amounts which it claims to be owed arising out of a failed business venture which it financed. On April 18, 2007, plaintiff agreed to finance a catfish farming venture operated by the defendants, in exchange for three promissory notes, including (1) a $180,000.00 Equipment Promissory Note; (2) a $560,000.00 Land Promissory Note; and (3) a $1,150,000.00 Operating Line of Credit Note. All three notes were secured by Deeds of Trust for real property located in Humphreys County and by a Security Interest in all catfish, and other live fish, feed inventory, fingerlings, machinery and equipment grown or used in the venture. Defendants defaulted on their repayment obligations, leaving an indebtedness of over $2.4 million owed to plaintiff.

On December 12, 2008, plaintiff foreclosed on the real property subject to the Deeds of Trust. Plaintiff was the only bidder at the foreclosure sale, and it successfully bid $2,404,711.17 on the property. In industry parlance, plaintiff's bid in the amount of the outstanding indebtedness is referred to as a "full credit bid," and, as discussed below, defendants have submitted authority indicating that the effect of such a bid is to extinguish the underlying debt. Plaintiff notes, however, that following the foreclosure sale, it commissioned a real estate appraisal which determined that the foreclosed property was worth only $803,865.00 and that, despite its best efforts to obtain a satisfactory price for the property, it only managed to sell it for $667,793.00 Plaintiff thus argues that a very large deficiency exists, and it filed this diversity action seeking to recover this deficiency.

On November 23, 2010, this court entered an order denying defendants' prior summary judgment motion, concluding, *inter alia,* that the factual record was incomplete and that the case was not ripe for resolution as a matter of law. Approximately ten days later, this court entered an order denying reconsideration of that ruling. Under these circumstances, the court would ordinarily take exception to a renewed motion for summary judgment being filed, but it finds that defendants have good reason for doing so in this case. In previously declining to grant summary judgment, the court noted that defendants' Mississippi authority was distinguishable since it involved lenders who made bids at foreclosure sales at prices which were alleged to be *too low. See, e.g. Wansley v. First National Bank of Vicksburg,* 566 So.2d 1218, 1223 (Miss.1990); *Haygood v. First National Bank of New Albany,* 517 So.2d 553 (Miss.1987); *Rankin County Bank v. McKinion,* 531 So.2d 822, 825 (Miss.1988). This is the exact opposite situation from this case, where the bid amount greatly exceeded the current fair market value of the property. It is dangerous to rely upon authority which arose in such a different context, and the court accordingly noted that it might have to decide this case on equitable grounds since neither side had presented it with authority on point.

As discussed below, defendants have now submitted very recent authority from other jurisdictions which is directly on point and which strongly supports their position in this case. Defendants can not

be faulted for failing to cite these decisions in their previous motion, since they had not been decided at that time. The parties have also supplemented the factual record in this case by submitting evidence regarding the circumstances surrounding LOL's decision to make a full credit bid. In its prior order, this court noted the lack of proof on this issue, and it expressed a reluctance to decide these issues without understanding the circumstances surrounding LOL's bid. In light of the parties' submissions, it is now clear that LOL's decision to offer the full indebtedness amount at the foreclosure sale was a conscious decision which it made in consultation with counsel. This weakens LOL's legal and equitable position in this case, since there are strong public policy considerations in favor of holding a sophisticated business entity such as LOL to decisions made in the course of important transactions such as foreclosure sales. The court is not prepared to say that a different result would be reached if the bid had been the result of, say, a clerical error, but it would regard the equitable considerations in this case as being more favorable to LOL if such had been the case.

Having established that LOL consciously made the decision to make a full credit bid at the foreclosure sale, the court now turns to the authority cited by defendants which addresses the consequences of that bid. In *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F.Supp.2d 978, 1006 (N.D.Ill.2010), an Illinois district judge recently wrote that the effect of such a full credit bid is generally to discharge the underlying debt and thereby preclude a deficiency action such as the one filed by LOL in this case. *Id.*, 720 F.Supp.2d at 1006. Specifically, the Illinois district court wrote in *Freedom Mortg.* that:

> Credit bidding is the practice of allowing a foreclosing lender to bid on the property at the auction. A full credit bid

equals the unpaid principal and interest of the mortgage debt. "Most states, including Illinois, hold that a lender is deemed to have received repayment of a loan in full if, at a foreclosure, it successfully bids the full amount of the loan (the "Full Credit Bid Rule")." *Freedom*, 2006 WL 695467, at *6; *see, e.g., Partel, Inc. v. Harris Tr. & Sav. Bank,* 106 Ill.App.3d 962, 965, 63 Ill.Dec. 303, 437 N.E.2d 1225 (1 Dist.1982) (*quoting Whitestone Sav. & Loan Assoc. v. Allstate Ins. Co.,* 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694, 696 (1971)) ("Because a mortgagee is entitled to one satisfaction of his debt and no more, the bidding in [full] of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted a satisfaction of the debt.").

*Id.*

In the 2011 decision of *M & I Bank, FSB v. Coughlin,* 805 F.Supp.2d 858 (D.Ariz.2011), an Arizona district court similarly wrote that, in cases involving a full credit bid:

> [n]ot only is the lender "deemed to have received repayment of [the] loan in full," the law will not look behind the bid to see whether the bid exceeded the property's market value. *Michelson v. Camp,* 72 Cal.App.4th 955, 963, 85 Cal. Rptr.2d 539, 544 (1999) ("under the full credit bid rule, the market value of the property is said to be the price obtained at the foreclosure sale"). Accordingly, "when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid." *Alliance Mortg. Co. v. Rothwell,* 10 Cal.4th 1226, 1238, 44 Cal.Rptr.2d 352, 900 P.2d 601, 608 (1995).

The full credit bid rule has various justifications, including that "[t]he lender,

perhaps more than a third party purchaser with fewer resources with which to gain insight into the property's value, generally bears the burden and risk of making·an informed bid." *Id.* at 1246, 44 Cal.Rptr.2d 352, 900 P.2d at 613. Further, "[t]o allow the [lender], after effectively cutting off or discouraging lower bidders, to take the property—and then establish that it was worth less than the bid—encourages fraud, creates uncertainty as to the [borrower]'s rights, and most unfairly deprives the sale of whatever leaven comes from other bidders." *Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.,* 28 N.Y.2d 332, 337, 321 N.Y.S.2d 862, 270 N.E.2d 694, 697 (1971). Thus, there must be "repercussions for making a full credit bid." *Michelson,* 72 Cal.App.4th at 964, 85 Cal. Rptr.2d at 545.

. . .

Nonetheless, a lender can avoid all of these consequences by bidding what it believes the property is actually worth. *Cornelison [v. Kornbluth],* 15 Cal.3d [590] at 607, 125 Cal.Rptr. 557, 542 P.2d [981] at 993 [ (1975) ]; *Whitestone,* 28 N.Y.2d at 335, 321 N.Y.S.2d 862, 270 N.E.2d at 696. Thus, lenders can make a rational choice: bid in the full debt and let the matter rest, or bid a lesser amount and preserve any rights that may exist to seek a deficiency judgment or to pursue others for insurance, tort damages, and so forth.

*Coughlin,* 805 F.Supp.2d at 866.

While not binding authority, the court finds the cases cited by defendants to be extremely persuasive. Indeed, the analysis and authority contained therein is so compelling that plaintiff has not attempted to rebut it, instead simply arguing that:

The Defendants next cite three cases, one from Illinois and two from Arizona. This Court previously expressed its concern about trying to shoe-horn the unusual facts of this case into legal authority that arose in a different context. Instead, this Court reasoned, "it would likely be better served by relying upon general considerations of equity." To the extent the Defendants seek to inject Illinois and Arizona case law into this matter, the Plaintiff respectfully submits that this Court's previous reliance on general considerations of equity and its concerns about "mis-applying authority which arose in a different context" are sound.

In so arguing, plaintiff misapprehends the reasons behind this court's stated inclination to decide this case as a matter of equity. This court certainly does not *prefer* to decide disputes such as this one on broad equitable grounds; it is far better to rely upon clear legal principles. The court's initial inclination to decide this case on equitable grounds was simply based upon a conclusion that the Mississippi authority cited by defendants was distinguishable and that, in the absence of clear legal principles to follow, the court might have no choice but to decide this case on equitable grounds. There are very significant disadvantages to deciding a case such as this one on equitable grounds, since the law is best served by having clear and consistent rules which the public can rely upon in important transactions such as foreclosure sales.

The court finds the "full credit bid" rule to be such a clear and consistent rule, and it makes an *Erie*-guess that the Mississippi Supreme Court would adopt it in an appropriate case. Indeed, the "full credit bid" rule is consistent with the Supreme Court's statement in *Wansley v. First National Bank of Vicksburg,* 566 So.2d 1218, 1223 (Miss.1990) that "[f]or purposes of determining whether a claim for a deficiency exists, the price for which a foreclosing creditor bids in at foreclosure to purchase the property fixes the value of the collater-

al, so long as the consideration is not so grossly inadequate to shock the conscience of the court." To reiterate, *Wansley* is factually distinguishable from this case since the argument here is that the consideration paid at the foreclosure sale was grossly excessive, not grossly inadequate. Still, it is apparent that adopting the "full credit bid" rule would establish a legal consistency between bids made in the "high bid" and "low bid" contexts, and the court believes that the Supreme Court would find this to be a desirable result. Moreover, this court believes that the Supreme Court would find the analysis of the Illinois and Arizona district courts in *Freedom Mortg.* and *Burnham* to be persuasive, as it itself did.[1]

The "full credit bid" rule clearly prohibits LOL from pursuing an action for a deficiency judgment against the defendants, and the court can discern no valid argument otherwise. LOL made a conscious business decision to make a full credit bid in this case, and the court does not regard it as unfair to hold it to the consequences of that decision. Plaintiff is not entitled to pursue a deficiency action in this case, and defendants' motion for summary will therefore be granted.

In light of the foregoing, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be issued this date, pursuant to Fed.R.Civ.P. 58.

### JUDGMENT

For the reasons given in the court's order issued this date, it is hereby ordered that this case is dismissed with prejudice.

---

1. The court agrees with defendants that the Mississippi Court of Appeals' decision in *Estate of Walters v. Freeman*, 904 So.2d 1140, 1142 (Miss.App.2004) serves as further indication in this regard, although that court lacks the authority to actually make new law.