# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01448-COA

**BROWN LAKELAND PROPERTIES AND**            **APPELLANTS**
**CHARLES H. BROWN**

**v.**

**RENASANT BANK**            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/08/2016 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PAMELA L. HANCOCK |
| | JEFFREY BRYAN MCGUIRE |
| ATTORNEYS FOR APPELLEE: | SCOTT R. HENDRIX |
| | L. BRADLEY DILLARD |
| | ROBERT BRANNON KAHLSTORF |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 02/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal we must decide whether the trial court properly granted summary judgment in favor of Renasant Bank, finding it was entitled to a deficiency judgment against Brown Lakeland Properties LLC (BLP) and Charles Brown (Brown).  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In November 2012, BLP executed two commercial promissory notes to Renasant Bank for the loan amounts of $2,880,320.87 (Note One) and $906,786.40 (Note Two).  Note

One was secured by a 635-acre parcel of land in Yazoo County, Mississippi, and a 2.93-acre parcel of property in Brandon, Mississippi, on which a bowling alley sat. Note Two was secured by a 6.75-acre parcel of land on Old Fannin Road, also in Brandon, Mississippi. At the time the loans were made, Brown executed and delivered to Renasant Bank multiple continuing guaranties related to the notes, and in doing so, individually guaranteed to Renasant the indebtedness due on the notes. BLP defaulted on both loans, and Renasant foreclosed on the properties that had been pledged as security under the notes. Renasant purchased all three parcels at a public foreclosure sale.

¶3.    In anticipation of the foreclosure sales, Renasant Bank obtained appraisals for all three parcels of land. The appraisals reported that the 2.93-acre, bowling-alley parcel had a market value of $1,500,000 and a disposition value (foreclosure or liquidation value) of $900,000; the 635-acre tract in Yazoo County had a market value of $1,240,000 and a disposition value of $930,000; and the 6.75-acre tract in Brandon had a market value of $1,475,000 and a disposition value of $885,000. In December 2014, at a public foreclosure sale, Renasant purchased the Rankin County properties—the 2.93-acre parcel for $778,100 and the 6.75-acre parcel for $780,000. Renasant purchased the Yazoo County 635-acre parcel for $900,000 at a public foreclosure sale in March 2015. BLP and Brown were given notice of the sales but did not attend either sale or bid on the properties.

¶4.    In April 2015, Renasant sold the Yazoo County property to a third-party purchaser for an amount greater than that obtained at the foreclosure sale. Accordingly, Renasant applied the excess proceeds of $198,774.44—being the difference between the proceeds from the

2

foreclosure sale and the proceeds from the third-party purchase—as a credit to the indebtedness owed under the notes. Likewise, in May 2015, Renasant sold the Rankin County properties to a third-party purchaser for an amount greater than that obtained at the foreclosure sale. Renasant also applied the excess proceeds from this sale, $228,501.59, as a credit to the indebtedness due under the notes.

¶5. After the collateral was liquidated and the excess proceeds from the third-party sales applied as credits to the notes, BLP and Brown remained indebted under the notes and continuing guaranties for the amount of $1,375,824.69. In July 2015, Renasant filed a complaint against BLP and Brown individually, seeking payment for the indebtedness due under the notes and continuing guaranties, as well as attorneys' fees and costs. In September 2015, BLP and Brown filed their answer, generally denying all of Renasant's claims and asserting all available defenses. BLP also filed a counterclaim, alleging that the foreclosure sales should be set aside for inadequate purchase prices, and that Renasant was negligent for failing to sell the properties in a commercially reasonable manner by failing to secure purchase prices that reflected the fair market values of the properties.

¶6. In May 2016, Renasant moved for summary judgment, asserting that it was entitled to relief under the terms of the notes and continuing guaranties due to the default of BLP. Renasant also moved for summary judgment with regard to BLP's counterclaim, asserting that there was no genuine issue of material fact regarding the commercial reasonableness of the sale. After a hearing on the motion, the trial court granted Renasant's motion for summary judgment, holding that BLP and Brown owed Renasant $1,416,722.86, which

included legal fees, pre- and post-judgment interest, and costs. The trial court also dismissed BLP's counterclaim with prejudice. BLP and Brown now appeal and assert the following issues: 1) Renasant failed to demand the post-foreclosure deficiencies; 2) Renasant failed to establish that its bids represented the fair market value of the properties; and 3) the appraisals of the properties were deficient.

## STANDARD OF REVIEW

¶7. This Court reviews a trial court's grant of summary judgment de novo. *Donovan v. Burwell*, 199 So. 3d 725, 729 (¶10) (Miss. Ct. App. 2016) (citing *Evans v. Howell*, 121 So. 3d 919, 922 (¶14) (Miss. Ct. App. 2013)). Under Mississippi Rule of Civil Procedure 56(c), summary judgment should be granted to the party seeking it, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review the evidence in the light most favorable to the nonmoving party. *Donovan*, 199 So. 3d at 729 (¶10). However, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id*.

## DISCUSSION

### I. Demand for Post-Foreclosure Deficiency

¶8. BLP and Brown argue that Renasant "failed to show as a matter of record that any

4

demand for the post-foreclosure deficiencies was ever made," and that this alone should have precluded summary judgment. For support, BLP cites only one case, *Gutierrez v. Gutierrez*, 153 So. 3d 703, 708 (¶13) (Miss. 2014), wherein the Mississippi Supreme Court stated, "The record does not contain evidence that demand has ever been made for the deficiency on the second mortgage, which is required under Mississippi law before a mortgagee can collect a post-foreclosure deficiency." However, we do not find that this isolated statement from *Gutierrez* is applicable to the instant case.

¶9. In *Gutierrez*, an appeal arising from a divorce action, the husband asserted that the chancellor erred in the calculation of assets and liabilities, resulting in an erroneous equitable distribution. *Id*. at 707-08 (¶10). The parties'—husband and wife—marital home was subject to two mortgages. *Id*. at 708 (¶11). Before trial, the bank holding the first mortgage foreclosed, which covered the first mortgage, but there was a balance remaining on the second mortgage. *Id*. The chancellor assessed the balance on the second mortgage equally between the husband and wife as a liability, even though the wife had not signed the promissory note and the chancellor had, in his alimony analysis, listed the second mortgage as the debt of the husband. *Id*. at (¶¶11-12). The supreme court's statement that the second mortgagee must make demand was specifically in relation to the fact that the chancellor assigned part of the deficiency on the second mortgage as a liability to the wife without "address[ing] the parties' respective obligations in the event the second mortgagee did obtain a deficiency judgment," and the holder of the second mortgage had not yet evidenced any intention to collect on the remaining balance. *Id*. at (¶13). *Gutierrez* simply does not apply

5

here.  The instant case does not deal with a second mortgage, nor does it deal with a mortgagee who has not shown an intention to collect on the indebtedness owed to it.

¶10.    Moreover, the record in the instant case supports that demand was made.  In his sworn affidavit, Scott Williams, vice president and special-assets officer with Renasant Bank, stated that Renasant had made demand upon BLP as borrower and Brown individually as guarantor, to pay in full the principal and interest due and owing under the notes and guaranties.  And finally, under the terms of the promissory note, BLP "waive[d] any required notice of . . . demand" and, in the event of default, Renasant could "pursue any remedy available" under the loan documents, at law, or in equity.  In a forbearance agreement executed to extend the maturity date of the loan, BLP and Brown acknowledged that the loan documents were valid and enforceable and that it had no defenses.  BLP does not dispute that it defaulted, nor does it allege that the foreclosure was wrongful.  This issue is without merit.

## II.    Fair Market Value

¶11.    In its second issue on appeal, BLP argues that Renasant failed to establish that its bids at the foreclosure sales represented fair market value of the property because its bids were less than the appraised values.

¶12.    "The creditor has no right to a deficiency judgment until he satisfies the court that it would be equitable, in the light of the sale price, to authorize a deficiency judgment." *Hartman v. McInnis*, 996 So. 2d 704, 710 (¶21) (Miss. 2007) (quoting *Wansley v. First Nat'l Bank*, 566 So. 2d 1218, 1225 (Miss. 1990)).  "Something more than a difference between the price paid at the foreclosure and the amount of the indebtedness must be demonstrated before

6

the mortgagee is entitled to a deficiency judgment." *Id*. (quoting *Wansley*, 566 So. 2d at 1224). "Where the foreclosing creditor buys at foreclosure, it must give the debtor fair credit for the commercially reasonable value of the collateral." *Id*. at 711 (¶23) (quoting *Wansley*, 566 So. 2d at 1221-22, 1224-25). "To determine the adequacy of the purchase price in satisfying the debt, the mortgagee must establish the fair market value of the property." *Id*. (citing *Allied Steel Corp. v. Cooper*, 607 So. 2d 113, 118-19 (Miss. 1992)).

¶13. "'Fair market value' is defined as 'the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.'" *Id*. (quoting Black's Law Dictionary 414 (6th ed.1991)). "The determination of the fair market value is a question for the trier of fact . . . ." *Id*. (quoting *Allied Steel*, 607 So. 2d at 118-19).

¶14. Here, Renasant provided evidence concerning the fair market value of both the Rankin County and Yazoo County properties. It hired independent certified appraisers to conduct appraisals in anticipation of the foreclosure sales, and the appraisal reports were completed in August 2014 (Rankin County properties) and January 2015 (Yazoo County property)—both shortly before the properties were sold.

¶15. BLP contends that Renasant did not establish the fair market value because it undisputedly purchased the three parcels for less than the foreclosure values by its own appraisals. However, Renasant did not merely demonstrate "a difference between the price paid at the foreclosure and the amount of indebtedness" in support of a deficiency judgment. All three parcels were later sold to third parties, demonstrating "the amount at which property

7

would change hands between a willing buyer and a willing seller," i.e., the fair market value. To the extent that these third-party sales resulted in an amount greater than the price paid at the foreclosure sale, Renasant applied these amounts, in addition to the foreclosure-sale prices, as a credit on BLP's indebtedness. Thus, by applying the credit from the third-party sales, Renasant gave BLP fair credit for the commercially reasonable value of the collateral and, in doing so, BLP was credited with a price greater than that of the appraised disposition values for both the Rankin County and Yazoo County properties. The record demonstrates that in regard to the Yazoo County property, BLP was credited with approximately $170,000 more than the appraised disposition value, and the credit was within approximately $150,000 of the appraised maximum market value. In regard to the Rankin County properties, BLP received credit for $1,786,000—the price at which the properties sold—being $1,000 more than the combined appraised disposition values. Renasant therefore established the fair market value of the properties and credited BLP with the same.

¶16.    BLP failed to contradict the appraisal values or the third-party sales values with their own appraisals or other expert opinion regarding the fair market value of the property. BLP asserted that it received an offer to purchase a portion of the Rankin County property, and that the amount was greater, per square foot, than that obtained at the foreclosure and third-party sales. Our law is clear, however, that "evidence of mere offers or options to purchase property is not competent to establish [a property's] fair market value." *Allied Steel*, 607 So. 2d at 119. Furthermore, fair market value is not established by extrapolating an inadmissible offer for a part of a parcel as evidence for value of the whole parcel. Thus, BLP failed to

8

present any competent evidence of fair market value to rebut the fair market value established by Renasant.

¶17.    While BLP argues that there is a genuine issue of material fact regarding the fair market value and sale of the properties, "[a] fact is neither material nor genuinely contested . . . merely because one party proclaims it so." *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1167 (¶10) (Miss. Ct. App. 2007).  A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Frazier v. McDonald's Rests. of Miss. Inc.,* 102 So. 3d 341, 345 (¶21) (Miss. Ct. App. 2012) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)).

¶18.    Here, there is no evidence that the appraised values or the third-party sales values were not fair market values.  A party opposing the motion for summary judgment "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *Miller v. Myers*, 38 So. 3d 648, 651 (¶13) (Miss. Ct. App. 2010).  The fair market value as established by Renasant was not genuinely disputed by contrary evidence, and BLP failed to meet its burden of rebuttal.  Renasant established the fair market value of the properties and demonstrated that there was no genuine issue of material fact with respect to the same.  BLP failed to rebut with any competent evidence showing there was a genuine dispute regarding the fair market value and sales price of the properties.  Therefore, Renasant established that it was entitled to a deficiency judgment and summary judgment was proper. This issue is without merit.

    III.    **Adequacy of the Appraisals**

¶19. BLP also asserts that the appraisals were deficient and were "inadequate as a proper metric of value for the subject parcels."

¶20. "Three standards are accepted in determining fair market value for real property: (1) the cost approach, (2) the income-capitalization approach, and (3) the market-data or comparative-sales approach." *Gulf S. Pipeline Co. v. Pitre*, 35 So. 3d 494, 498 (¶6) (Miss. 2010). "These approaches do not, considered singly, establish value. Each rather is one approach to value, with the appraiser's estimate of value being, in the end, an opinion which is the product of a reconciliation of the indications yielded by the three approaches." *Id*.

¶21. In this case, the Rankin County properties were appraised using the comparative-sales and income-capitalization approaches. The Yazoo County property was appraised using the comparative-sales and cost approaches. The respective appraisals employed the applicable approaches to value, and reconciled the values of the approaches utilized for a final value opinion. BLP criticizes the appraisals stating the approaches used were "either a worthless method, or in some instances, a potentially useful method was not employed." However, BLP does not offer evidence or state with specificity what approach should have been used in the alternative. Nor does BLP offer expert valuation testimony or competing appraisals. The record demonstrates that the appraisal reports were thorough and the methods utilized were well supported.

¶22. Again, "[a] fact is neither material nor genuinely contested . . . merely because one party proclaims it so." *Suddith*, 977 So. 2d at 1167 (¶10). Here, there is no genuine dispute that the appraisals were deficient as Renasant has established that the appraisals utilized the

applicable methods and BLP has offered no proof or evidence to the contrary. Additionally, the appraisals were not the only proof of value, as the actual market sales values were present in this case and BLP was given credit for the same. There is no genuine dispute regarding the adequacy of the appraisals or appraisal methods. Thus, this issue is without merit.

¶23. With respect to Renasant's claim against Brown individually as a guarantor, Renasant is not required to demonstrate that the foreclosure price was commercially reasonable. *See Bosarge v. LWC MS Props. LLC*, 158 So. 3d 1137, 1143 n.5 (Miss. 2015). "[U]nlike suits where the lender sues the primary borrower, an individual guaranty (as written in the contracts applicable here) does not require foreclosure or fairness of price. The guarantor is immediately liable upon the borrower's . . . default." *Id.* Here, Brown executed continuing guaranties which waived all defenses to the debt owed under the notes. Under the terms of the guaranty, in the event of default, Brown as guarantor would be liable for all the indebtedness under the notes. There is no dispute that BLP defaulted under the notes and, as a result, Brown is liable individually for the indebtedness due to Renasant.

**CONCLUSION**

¶24. Summary judgment is appropriate where there is no genuine issue of material fact, and the movant has established that it is entitled to a judgment as a matter of law. M.R.C.P 56(c). "The mortgagee's right to a deficiency decree usually depends on the facts and circumstances of each case . . . ." *Hartman*, 996 So. 2d at 711 (¶22). BLP and Brown do not dispute that they owe Renasant some money under the notes and continuing guaranties, but rather dispute the amount they owe under the facts and circumstances of this case. However, Renasant has

11

established that it is entitled to a deficiency judgment against BLP and Brown for the remaining indebtedness due under the notes and under the personal guaranty. Despite BLP's and Brown's assertions, they have failed to present any competent evidence contradicting the claims established by Renasant, and thus fail to demonstrate there are genuine issues of material fact. The trial court's judgment for Renasant Bank "against [BLP] and Brown, jointly and severally in the amount of . . . [$1,416,722.86], [including] $16,000.00 in legal fees, plus pre- and post-judgment interest at the highest lawful rate, costs and any future accruing reasonable attorneys' fees and expenses of Renasant Bank pursuant to the Notes and related guaranties" is affirmed.

¶25.    **AFFIRMED.**

**GRIFFIS, P.J., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINON. BARNES, J., NOT PARTICIPATING.**