# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00303-COA

**JIMMIE FUGLER AND CHUCK FUGLER**                              **APPELLANTS**

**v.**

**BANK OF BROOKHAVEN**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2021 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KATHRYN CAROLINE BOYD |
| ATTORNEYS FOR APPELLEE: | SCOTT TIMOTHY ELLZEY |
| | DRURY SUMNER HOLLAND |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., McDONALD AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.    Jimmie and Chuck Fugler filed a premises-liability lawsuit against the Bank of Brookhaven (the Bank) after Jimmie tripped and fell on a floor mat as she entered the Bank. Following a hearing on the Bank's motion for summary judgment, the Lincoln County Circuit Court determined that no genuine issues of material fact existed and that the Bank was entitled to summary judgment as a matter of law.  Upon review of the Fuglers' appeal from the circuit court's judgment, we find no error and affirm the circuit court's grant of summary judgment to the Bank.

**FACTS**

¶2. On March 21, 2017, Jimmie and Chuck stopped by the Bank to exchange three rolls of quarters for dollar bills. Chuck remained in the couple's vehicle while Jimmie walked toward the Bank with the rolls of quarters in her hand. Jimmie testified that as she entered the Bank, she tripped over a rubber floor mat positioned in front of the Bank's door. Jimmie stated that she fell into the Bank's door with her head and body and sustained injuries to her head, left elbow, and right hand. Jimmie testified that as far as she was aware, no one else witnessed her fall. Chuck confirmed that he did not personally observe Jimmie's fall from inside the couple's vehicle. Jimmie also confirmed during her deposition that she had no actual knowledge of the floor mat's condition prior to her fall. According to Jimmie, she did not even notice the floor mat in front of the Bank's door prior to her fall, and she stated it was only after her fall that she observed a corner of the mat upturned. Jimmie further confirmed that she had no evidence to show how the mat's corner might have become upturned or to show the length of time, if any, that the mat's corner was upturned prior to her fall.

¶3. On September 27, 2018, the Fuglers filed a premises-liability suit against the Bank. The Fuglers alleged the Bank knew or should have known about the condition of the floor mat and that the mat presented a danger to customers. Further, the Fuglers asserted that the Bank failed to correct or prevent the hazardous condition of the floor mat or to display any warning signs regarding the mat. In addition to asserting a claim of negligence against the Bank, the Fuglers raised claims of negligent training and supervision, loss of consortium, and negligent infliction of emotional distress. The Bank answered the complaint and asserted

various affirmative defenses to the Fuglers' claims.

¶4.     As the Bank's designated corporate representative, Shannon Aker provided an affidavit during discovery. Aker stated that he had worked at the Bank since its opening in January 2000 and had served as the Bank's president for about five years. According to Aker, about three hundred customers entered the Bank on a daily basis. Prior to Jimmie's fall, Aker averred "there had never been an incident involving a person allegedly tripping over a floor mat at [the] Bank[,]" and the Bank had never before "received any complaints and was never made aware of any problems, issues, or hazards regarding floor mats on its property." Aker stated the Bank was unaware of anyone who had "observed the subject floor mat allegedly turned or curled up prior to the subject incident" and had no knowledge of the mat being turned up prior to Jimmie's fall. Moreover, even if the floor mat had been turned up prior to Jimmie's fall, Aker avowed that the Bank had "no knowledge regarding the length of time it was allegedly in such condition." Aker further stated that based on the placement of the Bank's interior and exterior cameras, none of the cameras captured footage of the incident.

¶5.     The parties also deposed Aker, who reiterated the statements made in his affidavit. As in his affidavit, Aker testified that no issues regarding the floor mats had ever arisen prior to Jimmie's fall, and he stated that no one had ever before informed him that a corner of the mats had become upturned. Aker testified that he and other employees constantly monitored the Bank's floors and entryway to keep the premises neat and orderly, and he maintained that the floor mat at issue was as secure as it could reasonably be. Aker testified that he was

3

unaware of there ever having been a need to press down the floor mats or to fix the corners of the mats. According to Aker, the mat was "a heavy-duty commercial mat that stays flat. It's rubberized on the bottom and carpet on the top. . . . [W]e replace them every year. So we don't let them wear [out]." Based on the experience and knowledge he had gained in his almost twenty years of working at the Bank, Aker strongly disputed the Fuglers' claim that the corner of the floor mat at issue could have become upturned prior to Jimmie's fall.

¶6. On August 17, 2020, the Bank moved for summary judgment under Mississippi Rule of Civil Procedure 56. The Bank asserted Jimmie had failed to establish that the Bank caused the floor mat to be turned up or possessed actual or constructive knowledge of the floor mat's alleged condition prior to Jimmie's fall. Arguing that no disputed issues of material fact existed, the Bank maintained it was entitled to summary judgment as a matter of law.

¶7. Following a hearing on the Bank's summary-judgment motion, the circuit court entered its order on February 22, 2021. The circuit court concluded the Fuglers had failed to allege any set of facts to establish that (1) "the [B]ank's negligence created [a] curl in the corner of the [floor mat]"; (2) "the [B]ank had actual knowledge that a curl in the corner of the [floor mat] existed prior to [Jimmie's] fall"; or (3) "a curl had been in the corner of the [floor mat] for a period of time sufficient to impute knowledge of the condition to the [B]ank." Thus, even viewing the evidence in a light most favorable to the Fuglers, the circuit court found that no genuine issues of material fact existed and that the Bank was entitled to a grant of summary judgment. Aggrieved by the circuit court's judgment, the Fuglers appeal.

4

## STANDARD OF REVIEW

¶8.     We review the circuit court's grant of summary judgment de novo. *Green v. Supermkt. Operations Inc.*, 330 So. 3d 434, 437 (¶11) (Miss. Ct. App. 2021). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." *Yoakum v. Smith (In re Est. of Yoakum)*, 311 So. 3d 686, 689 (¶9) (Miss. Ct. App. 2021) (quoting *Wright v. R.M. Smith Invs. L.P.*, 210 So. 3d 555, 557-58 (¶6) (Miss. Ct. App. 2016)). Where the movant properly supports his motion for summary judgment, the nonmovant "may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "A dispute is 'genuine' where 'the evidence is such that a reasonable jury could return a verdict for the nonmovant.'" *Wood v. Reynolds*, 316 So. 3d 208, 211 (¶17) (Miss. Ct. App. 2021) (quoting *Brown Lakeland Props. v. Renasant Bank*, 243 So. 3d 784, 790 (¶17) (Miss. Ct. App. 2018)).

## DISCUSSION

¶9.     The Fuglers allege, and the Bank does not dispute, that Jimmie was an invitee on the Bank's premises. According to the Fuglers, the Bank breached the duty of care owed to Jimmie by failing to exercise reasonable care to keep its premises in a reasonably safe

condition. The Fuglers further contend the Bank breached the duty owed to Jimmie by failing to have policies, measures, and regular inspections in place to ensure the reasonable safety of its premises. Arguing that genuine issues of material fact exist, the Fuglers request that this Court reverse the grant of summary judgment to the Bank and remand this case for a jury trial.

¶10. Relevant to the Fuglers' claims on appeal, this Court has previously stated:

> An invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A landowner owes a business invitee a duty of reasonable care for the invitee's safety. The landowner must keep the premises in a reasonably safe condition and has a duty to warn of known dangerous conditions not readily apparent but discoverable by reasonable inspection of the premises. However, mere proof of the occurrence of a fall on a floor within the business premises is insufficient to show negligence on the part of the proprietor.
>
> In a premises-liability action, the plaintiff must prove one of the following to recover: (1) a negligent act of the defendant caused her injury; (2) the defendant had actual knowledge of the dangerous condition and failed to warn her; or (3) the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant.

*Green*, 330 So. 3d at 438 (¶¶12-13) (citations and internal quotation marks omitted).

¶11. Upon review, we find the Fuglers presented no genuine issues of material fact regarding whether the Bank breached its duty to Jimmie through a negligent act or had actual or constructive knowledge of a dangerous condition. Through Aker, its president and designated corporate representative, the Bank presented testimony that the Bank was unaware of any prior incidents with its floor mats in general or of any specific concerns with the floor mat at issue. Aker testified that he had worked at the Bank for almost twenty years and was unaware of a single prior incident involving the Bank's floor mats. Aker stated that around

three hundred customers entered the Bank on a daily basis, and to his knowledge, no one else had ever tripped over a floor mat or expressed concern about a corner of the floor mats being upturned. According to Aker, the floor mat at issue was a heavy-duty commercial-grade mat with a rubberized bottom and was as reasonably secure as a floor mat could be. Aker further testified that the Bank not only replaced the floor mats on a yearly basis to prevent them from wearing out but that he and the other Bank employees also constantly monitored the floors and entryway to ensure the Bank's premises remained neat and orderly.

¶12. For their part, the Fuglers failed to rebut the Bank's summary-judgment motion with any specific evidence to show that the Bank breached the reasonable-care standard owed to Jimmie. Jimmie stated during her deposition that she had no actual knowledge regarding the floor mat's condition prior to her fall. She further admitted that she had no evidence to establish how the corner of the mat became upturned or the length of time, if any, it had been upturned prior to her fall. According to Jimmie, she did not even notice the floor mat until after she fell, and it was therefore only after her fall that she observed a corner of the mat upturned. Chuck, who testified that he remained in the couple's vehicle, did not actually see Jimmie's fall, and to Jimmie's knowledge, no one else witnessed her fall or the events leading up to the fall.

¶13. Without more than "mere proof of the occurrence of a fall on a floor within the business premises[,]" the Fuglers cannot establish negligence by the Bank. *Green*, 330 So. 3d at 438 (¶12) (quoting *Hearn v. Square Prop. Invs. Inc.*, 297 So. 3d 292, 295 (¶10) (Miss. Ct. App. 2020)). Even after viewing all the evidence in the light most favorable to the

7

Fuglers, we find they failed to present any evidence of a genuine issue of material fact as to whether the Bank breached the standard of care owed to Jimmie or had actual or constructive notice of a dangerous condition on its premises. We therefore find no error in the circuit court's determination that the Fuglers provided insufficient evidence to survive the Bank's summary-judgment motion.

## CONCLUSION

¶14. Because we find no error in the award of summary judgment to the Bank, we affirm the circuit court's judgment.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**