# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00959-COA

RACHEAL HARRIS                                                      APPELLANT

v.

CASINO VICKSBURG, LLC D/B/A                                         APPELLEE
WATERVIEW CASINO

DATE OF JUDGMENT:            08/17/2023
TRIAL JUDGE:                 HON. TONI DEMETRESSE TERRETT
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      TREMARCUS D'RAY KESHON ROSEMON
ATTORNEYS FOR APPELLEE:      W. BRIGGS HOPSON III
                             ROBERT WILLIAM ARLEDGE
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                 AFFIRMED - 03/18/2025
MOTION FOR REHEARING FILED:

   EN BANC.

   WEDDLE, J., FOR THE COURT:

¶1.    Racheal Harris fell while attempting to sit in a chair at Casino Vicksburg LLC d/b/a

Waterview Casino (Waterview) in Vicksburg, Mississippi.  Harris filed a premises-liability

lawsuit against Waterview in the Warren County Circuit Court.  Waterview successfully

moved for summary judgment.  After considering Harris's appeal, we find no error.  We

therefore affirm the circuit court's order granting summary judgment in favor of Waterview.

## FACTS

¶2.    On May 15, 2021, Harris and her husband visited Waterview.  Video footage of

Waterview's casino floor showed that shortly before her fall, Harris sat at the end of a row

of four slot machines.  Each slot machine faced a single chair.  As Harris played her slot

machine, a patron moved a chair from another part of the casino floor, placed his chair beside an occupied seat on the opposite end of the row of slot machines, and seated himself. Although the chairs placed in front of the four slot machines were situated on carpet, the chair moved by the unknown patron straddled a portion of the casino floor that changed from carpet to synthetic tile. A band of metal edge trimming delineated the boundary between the two types of flooring.

¶3.     The patron sitting in front of the slot machine farthest from Harris and the patron sitting in the extra chair beside that slot machine eventually left their seats. Harris's husband then sat down in the chair directly in front of the open slot machine. Shortly afterward, Harris approached the vacant chair beside her husband's seat. Unfortunately, as Harris attempted to sit down, the chair slid out from underneath her, and Harris fell backward onto the casino floor.

¶4.     Harris's husband helped her get up from the floor, and a security guard approached and asked if she wanted him to call for an ambulance to take her to the hospital. Harris declined the security guard's offer and went to a nearby hospital the following morning. On October 12, 2021, Harris filed a negligence lawsuit against Waterview for the injuries she sustained while on the casino's premises. Harris initially claimed that the chair she had attempted to sit on was defective.

¶5.     After conducting discovery and reviewing Waterview's video footage of her fall, Harris amended her complaint to allege that the chair in question had slipped from beneath her due to its placement on the part of Waterview's floor that changed from carpet to

synthetic tile. Harris designated Dr. Jeffrey Lolli as an expert in the fields of "Business, Tourism, Hospitality Management, Housekeeping/Maintenance, and Casino and Resort Operations and Management." According to Harris, Dr. Lolli planned to testify that allowing "a chair to be in a place where it did not belong . . . constituted a hazardous/dangerous condition." In addition, Dr. Lolli planned to testify that Waterview breached its duty of care to Harris "by allowing patrons to move chairs around the casino without having a formal, written policy and proper employee training regarding protocols for proper slot machine chair placement and the actions to take when chairs are moved, misplaced, congregated, or not in the proper location."

¶6. Waterview moved for summary judgment, and Harris moved for partial summary judgment as to Waterview's liability. After a hearing on the parties' motions, the circuit court found that the chair at issue failed to create a dangerous condition and that Waterview had not breached its duty to Harris. The circuit court therefore denied Harris's motion for partial summary judgment and granted Waterview's motion for summary judgment. Aggrieved, Harris appeals.

**DISCUSSION**

¶7. On appeal, Harris asserts "that no genuine issue of material fact exists regarding Waterview's liability to [her]." As a result, Harris contends that the circuit erred by denying her motion for partial summary judgment and granting Waterview's motion for summary judgment. Accordingly, she asks this Court to reverse the circuit court's grant of summary judgment in favor of Waterview and to remand the matter for further proceedings.

3

¶8. When a party requesting summary judgment sufficiently supports his motion, "the nonmovant 'may not rest upon the mere allegations or denials of his pleadings . . . .'" *Walters Invs. Inc. v. Spell*, 333 So. 3d 61, 68 (¶15) (Miss. Ct. App. 2021) (quoting M.R.C.P. 56(e)). Instead, the party opposing summary judgment "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *Brown Lakeland Props. v. Renasant Bank*, 243 So. 3d 784, 791 (¶18) (Miss. Ct. App. 2018) (quoting *Miller v. Myers*, 38 So. 3d 648, 651 (¶13) (Miss. Ct. App. 2010)). "A fact is neither material nor genuinely contested merely because one party proclaims it so." *Walters Invs.*, 333 So. 3d at 68 (¶15) (quoting *Brown Lakeland Props.*, 243 So. 3d at 790 (¶17)). Rather, we consider a dispute to be "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id.* "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Keckley v. Estes Equip. Co.*, 276 So. 3d 1230, 1236 (¶15) (Miss. Ct. App. 2018) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (¶11) (Miss. 2013)).

¶9. Because Harris was an invitee on Waterview's premises, the casino owed her "the duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view." *Rhodes v. RL Stratton Props. LLC*, 376 So. 3d 385, 389 (¶11) (Miss. Ct. App. 2023). To prevail on her premises-liability claim, Harris first "must show that a dangerous condition exists." *Keckley*, 276 So. 3d at 1236 (¶18) (quoting *McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶13)

4

(Miss. Ct. App. 2010)). "A property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." *Walker v. Cellular S. Inc.*, 309 So. 3d 16, 25 (¶31) (Miss. Ct. App. 2020) (quoting *Bonner v. Imperial Palace of Miss. LLC*, 117 So. 3d 678, 682 (¶12) (Miss. Ct. App. 2013)).

¶10.    "[M]ere proof . . . the [plaintiff] fell and was injured while on the premises is insufficient to establish liability" without additional evidence to show "that a dangerous condition actually caused the . . . injury . . . ." *Carroll v. Singing River LLC*, 309 So. 3d 567, 570 (¶¶6-7) (Miss. Ct. App. 2020) (quoting *Patterson v. Mi Toro Mexican Inc.*, 270 So. 3d 19, 21 (¶7) (Miss. Ct. App. 2018)). Here, the parties dispute whether the chair at issue was placed in such a way on Waterview's floor so as to rise to the level of a dangerous condition. "With the benefit of hindsight, it is easy to say that [Harris's] injury possibly could have been prevented if" the chair had not been situated on an area of Waterview's floor that changed from carpet to synthetic tile. *Morgan v. Riverboat Corp. of Miss.*, 395 So. 3d 1026, 1030 (¶11) (Miss. Ct. App. 2024). "But the Court is not justified in standing on the vantage ground of what did happen on the occasion complained of and look back in the direction from effect to cause. Rather, we must go back and view the situation from the standpoint of foreseeability before the accident occurred." *Id.* (citation and internal quotation marks omitted).

¶11.    In its order granting summary judgment in favor of Waterview, the circuit court relied on the testimony of Rosia Wilson, Waterview's designated corporate representative. Wilson explained multiple times during her deposition that Waterview allows customers to move

5

chairs as long as the chairs remain on the casino floor. Wilson also explained that Waterview employees would return chairs to their original location as the need arose. The circuit court noted Wilson's testimony that Waterview had gaming areas other than the casino floor where the chairs were not situated on carpet. As an example, the circuit court referenced Wilson's testimony about Waterview's bar area, which not only was "composed of tile" but also had chairs that "sit a little higher than the one from which [Harris] slipped."

¶12. The record reflects no evidence that accidents similar to Harris's fall had ever occurred on Waterview's premises. Thus, "[t]here was no reason for [Waterview's] employees to anticipate such an unprecedented event on the day in question." *Morgan*, 395 So. 3d at 1031 (¶12). Moreover, even as an invitee, Harris was "still required to use in the interest of [her] own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Stephens v. City of Gulfport*, 379 So. 3d 399, 407 (¶27) (Miss. Ct. App. 2024) (quoting *Campbell v. Harrison Cnty. Bd. of Supervisors*, 269 So. 3d 1269, 1275 (¶19) (Miss. Ct. App. 2018)). Harris acknowledged that she previously had sat in the same type of chair on Waterview's casino floor without any problems. During her deposition, Harris testified that she had been a patron of Waterview for years, and she estimated that she had made at least fifty trips to the casino. Not long before her fall, Harris had been playing Waterview's slot machines and, as acknowledged, had sat on the same type of chair as the one at issue. As a result of her familiarity with Waterview and its casino chairs, though, Harris agreed that she simply did not pay close attention to the subject chair as she attempted to sit beside her husband.

6

¶13. Despite her admissions, Harris maintains that the casino chair's placement over the metal edge trimming and the two types of flooring transformed an otherwise innocuous object into an unreasonably dangerous condition. Previously, this Court has found that circumstances can transform a routine object into a dangerous condition. In *Keckley*, the claimant suffered injuries when she tripped on a piece of yellow caution tape lying across a sidewalk outside a convenience store. *Keckley*, 276 So. 3d at 1233 (¶1). Although the caution tape appeared to be lying loosely on the ground, Keckley realized after her fall that the tape was actually "tied to a pole on one side of the sidewalk and a brick pillar on the other." *Id.* As Keckley attempted to step over the piece of caution tape, a gust of wind lifted the tape off the ground, creating a sudden tripwire-like effect that resulted in Keckley's fall. *Id.* In considering the defendants' argument in *Keckley* that the caution tape was the type of danger a patron might reasonably expect to encounter on a business's premises, we concluded that such objects could become an "unreasonable or unusually dangerous condition" if circumstances "suddenly and without warning" transformed the nature of the object in "hidden and surprising" ways. *Id.* at 1237-38 (¶¶21-23) (quoting *Cox v. Wal-Mart Stores East L.P.*, 755 F.3d 231, 235 (5th Cir. 2014)).

¶14. More recently, this Court considered the potential tripwire-like effect of an unsecured baby gate propped against the doorway between a home's kitchen and living room. *Georgen v. Estate of Brown-Barrett*, No. 2023-CA-00344-COA, 2024 WL 4209619, at **4-5 (¶¶21-25) (Miss. Ct. App. Sept. 17, 2024), *reh'g denied* (Jan. 14, 2025), *pet. for cert. filed* (Jan. 27, 2025). In discussing the issue, we noted that the homeowner had set up the baby gate while

7

the claimant faced the opposite direction. *Id.* at *5 (¶25). As a result, the claimant, who had been "living at her friend's home for an extended period of time[,]" had no expectation that when she turned around, the baby gate would suddenly be blocking her path from the living room to the kitchen. *Id.* at **1, 3 (¶¶1, 17). In addition, the claimant stated she had been unaware that the baby gate was left "unsecured and merely leaning" in the doorway. *Id.* at *4 (¶21). After finding that genuine issues of material fact existed as to whether the unsecured baby gate created an unreasonably dangerous condition, we reversed the circuit court's order granting summary judgment and remanded the matter for further proceedings. *Id.* at *5 (¶28).

¶15.    Upon review, we find the circumstances of Harris's fall are distinguishable from the facts provided in *Keckley* and *Georgen*. In both *Keckley* and *Georgen*, the complained-of condition arose unexpectedly either at the exact moment the claimant attempted to walk over the item or while she faced the other direction from the obstruction. *Keckley*, 276 So. 3d at 1233 (¶1); *Georgen*, 2024 WL 4209619, at *5 (¶25). And in both prior cases, the claimant appeared to lack sufficient time to process the sudden change of circumstances and to react accordingly to avoid the potentially dangerous condition. We conclude, however, that the same reasoning does not apply to Harris's fall.

¶16.    As with the caution tape in *Keckley*, the chair Harris attempted to sit on was in plain view. But unlike the hidden and suddenly changing nature of the caution tape in *Keckley*, the danger of which Harris complains (i.e., the casino chair's placement on the floor) was not hidden, nor did its nature suddenly change so as to convert a routinely encountered object

8

into an unusually dangerous condition. Instead, the chair sat for several minutes on Waterview's casino floor in full view of everyone—including Harris.

¶17.    Waterview's video footage clearly showed that Harris had an unobstructed view of the chair and its placement on the casino floor as she approached, circled around to the front of the chair, and then attempted to seat herself. While the caution tape Keckley stepped over unexpectedly transformed into a tripwire, and while Georgen lacked any prior knowledge of the placement of the baby gate or its unsecured state, the condition of Harris's chair and its placement on Waterview's floor remained the same at all relevant times as Harris approached and attempted to sit down. *Keckley*, 276 So. 3d at 1233 (¶1); *Georgen*, 2024 WL 4209619, at *5 (¶25). Moreover, as Waterview reiterates on appeal, all casino patrons, including Harris, are permitted to place or reposition chairs however they choose to do so on the casino floor. Thus, nothing would have prevented Harris herself from moving a casino chair to the same area of the floor beside her husband if she had wished to do so.

¶18.    With regard to this point, Harris's expert, Dr. Lolli, opined that Waterview's practice of allowing patrons to move chairs around the floor and permitting employees to return the chairs to their original location on an as-needed basis constituted a breach of the standard of care. According to Dr. Lolli, Waterview further breached the standard of care owed to patrons because the casino lacked a formal internal policy that dictated the proper placement of the casino chairs. Essentially, Dr. Lolli asserts that Waterview's mode of operation as to the placement of its casino-floor chairs was negligent.

¶19.    "The advantage of this theory of liability is that 'when an owner of a self-service

9

establishment has actual notice that his mode of operation creates certain risks of harm to customers, and those risks are foreseeable, it is not necessary for the plaintiff to prove notice of the hazard that caused the injury.'" *Bonner*, 117 So. 3d at 683 (¶16) (quoting *Sullivan v. Skate Zone*, 946 So. 2d 828, 832 (¶12) (Miss. Ct. App. 2007)). "Proponents of the mode-of-operation theory . . . argue that a business could operate in such a way that creates risks to customers." *Daniels v. Fam. Dollar Stores of Miss. Inc.*, 351 So. 3d 964, 968 n.4 (Miss. Ct. App. 2022). [I]n essence[,]" the theory "creates strict liability." *Id.* "However, Mississippi appellate courts have consistently declined to adopt this theory [of mode of operation], and we are bound by those holdings." *Id.* at 971 (¶21); *see also Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 467 (¶13) (Miss. Ct. App. 2003); *Bonner*, 117 So. 3d at 685 (¶23); *Hearn v. Square Prop. Invs. Inc.*, 297 So. 3d 292, 298 (¶24) (Miss. Ct. App. 2020). Thus, based on clearly established precedent, we find that the circuit court properly rejected Dr. Lolli's mode-of-operation theory of negligence and correctly held that his opinions on the matter failed to create any genuine issues of material fact sufficient to survive summary judgment.

¶20. In his report documenting his findings and opinions, Dr. Lolli cited the National Institute of Occupational Safety and Health (NIOSH) for the principle that carpet generally has a greater coefficient of friction, or resistance to slipping, than hard-floor surfaces. Dr. Lolli opined that carpet provided a higher degree of coefficient of friction for Waterview's chairs, allowing the chairs to remain firmly in place when patrons attempted to sit down. By contrast, Dr. Lolli opined that the coefficient of friction for the chair that Harris attempted to sit in was greatly reduced because the chair was partially on a hard-floor surface.

10

¶21.    Despite Dr. Lolli's opinions regarding the coefficient of friction, Harris's attorney specifically confirmed during oral arguments before this Court that Harris's theory of liability against Waterview was not premised on the alleged lack of friction between her chair and the casino's synthetic tile.   We therefore find that on appeal Harris has waived any claims alleging insufficient traction between her chair and the synthetic-tile flooring.

¶22.    Notwithstanding this waiver, the record contains no evidence that Dr. Lolli provided sufficient scientific support for his coefficient-of-friction opinions.   Other than his own subjective opinions, Dr. Lolli provided no testimony or evidence to establish that placing a casino chair on a synthetic-tile floor constitutes a substandard industry practice.   Dr. Lolli also never testified that he personally inspected Waterview's floor or employed reliable testing or methodology before concluding that the partial placement of the casino chair on synthetic tile created insufficient traction.  *See Thomas v. Shed 53 LLC*, 331 So. 3d 66, 75 (¶¶29-31) (Miss. Ct. App. 2021) (affirming the circuit court's exclusion of expert testimony where "there was no scientific basis to the experts' conclusion that a restaurant's outside use of wooden picnic tables [was] a substandard practice that could result in safety issues"); *Walker*, 309 So. 3d at 22 (¶18) (affirming the exclusion of expert testimony about insufficient traction between a store's stool and floor because the expert admitted "there [was] no standard for chair[-]slip cases[,]" and he had used an "untested methodology").

¶23.    Upon review of the record as a whole, including the clear and indisputable video footage of Harris's fall, we conclude that Harris has not met her threshold burden of proof. Harris has failed to establish by significant probative evidence that Waterview's chair was

not simply a routinely encountered object but rather a dangerous condition. As we have previously explained, "[w]ithout evidence of a 'dangerous condition,' or proof of any similar incidents, 'no reasonable jury could conclude the chair in relation to the flooring was unreasonably dangerous.'" *Walker*, 309 So. 3d at 26 (¶38) (quoting *Patterson*, 270 So. 3d at 22 (¶8)). Viewing the record evidence in the light most favorable to Harris, we find that no genuine issues of material fact exist with regard to the "dangerous condition" element of Harris's premises-liability claim. Because no genuine issues of material fact remain in dispute, we affirm the circuit court's grant of summary judgment in favor of Waterview.

## CONCLUSION

¶24. After finding that Harris has failed to show the existence of a dangerous condition and that Waterview is entitled to judgment as a matter of law, we affirm the circuit court's order granting summary judgment in favor of Waterview and denying Harris's motion for partial summary judgment.

¶25. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., LAWRENCE, McCARTY, EMFINGER AND ST. PÉ, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND McDONALD, J.**

**WESTBROOKS, J., DISSENTING:**

¶26. I find that a genuine issue of material fact exists regarding whether Waterview exercised reasonable care in maintaining a safe gaming area for its patrons. Harris' testimony, the video of the accident, and Dr. Lolli's report provided sufficient evidence to create a jury question about whether the misplaced chair constituted a dangerous condition.

12

The chair was positioned in a dangerous manner, and it was not in its proper area. Several Waterview employees passed by the chair numerous times and allowed it to remain there for seven minutes. To substantiate her claim, Harris presented an expert in casino and resort operations and management. This expert found that Waterview had a duty to take reasonable steps to prevent foreseeable hazards caused by misplaced chairs and that Waterview breached this duty by not implementing written policies or procedures to relocate chairs to their proper place. Waterview presented no evidence or expert testimony to refute Harris' expert's findings and opinion. Accordingly, I would reverse and remand this case to the circuit court for a trial on the merits. Thus, I respectfully dissent.

¶27. We employ a three-step process in premise liability cases. "First, we must determine whether the injured party was an invitee, licensee, or a trespasser at the time of the injury. Next, we must determine what duty was owed to the injured party by the business owner/operator. Finally, we must determine whether that duty was breached." *Walker v. Cellular S. Inc.*, 309 So. 3d 16, 24 (¶27) (Miss. Ct. App. 2020) (quoting *Haggard v. Wal-Mart Stores Inc.*, 75 So. 3d 1120, 1124 (¶9) (Miss. Ct. App. 2011)). "Regarding the duty element, 'the owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition.'" *Thomas v. Shed 53 LLC*, 331 So. 3d 66, 70 (¶13) (Miss. Ct. App. 2021) (quoting *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1103 (¶12) (Miss. Ct. App. 2016)).

¶28. "Additionally, if a plaintiff proves circumstances from which the jury might reasonably conclude that the dangerous condition was one that was traceable to the

proprietor's own act or omission, no proof of notice is necessary." *Babin v. Wendelta Inc*, 368 So. 3d 363, 370 (¶23) (Miss. Ct. App. 2023) (quoting *Miss. Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 156 So. 2d 734, 736 (1963)). "When a dangerous condition on the premises is caused by the operator's own negligence, no knowledge of its existence need be shown." *Id.*

¶29. "An invitee is a person who enters the premises of another in response to an 'express or implied invitation of the owner or occupant for their mutual advantage.'" *St. Dominic-Jackson Mem'l Hosp. v. Martin*, 386 So. 3d 359, 364 (¶15) (Miss. 2024) (quoting *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1166 (Miss. 2011)). There is no dispute that Harris was an invitee. Accordingly, Waterview owed her a duty to exercise reasonable care to keep the premises in a reasonably safe condition. To prove a breach of the duty, Harris must show that a dangerous condition existed. *See McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶13) (Miss. Ct. App. 2010). Additionally, she must prove one of the theories of premises liability. To do this, she must either:

> (1) show that some negligent act of the defendant caused [her] injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Walker*, 309 So. 3d at 24 (¶29). "[R]egardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim." *Thomas*, 331 So. 3d at 71 (¶17) (quoting *Jones*, 187 So. 3d at 1104 (¶12)).

¶30. Harris contends that the chair's being in an area where it was not supposed to be was

14

the dangerous condition that caused her injuries. "There is no specific definition of a 'dangerous condition.' A condition may be considered 'dangerous' in even the simplest of circumstances." *Babin*, 368 So. 3d at 370 (¶24). Wilson admitted that Waterview did not have any written policies or procedures regarding the proper placement of chairs and the removal of dangerous conditions. She also admitted that employees should move misplaced chairs to their proper location:

Q. Okay. So you would agree with me that just naturally there would be one chair in front of each slot machine. Would that be correct?

A. Yes.

Q. Okay. Now, if chairs are moved to where there are multiple chairs in front of one machine, who would take that extra chair and put it back to where it's supposed to be?

A. Okay. If no one is sitting in the chairs or if we think that the guest is completely, like, gone from that area, if housekeeping is -- is walking through there they would probably move it around. If the slot attendants are walking through or even if I'm walking through as the HR person or any employee, you know, they would probably push it up to the slot machines that they're out of place.

Q. Okay. So based on what you just said, if there were multiple chairs in front of a single machine and really any employee that walked by saw it and nobody's playing there, that employee will probably move that chair to another location?

A. They should.

Harris' designated expert, Dr. Jeffrey C. Lolli, submitted an affidavit arguing that Casino Vicksburg breached the standard of care owed to Harris "by failing to have formal policies and procedures and employee training protocols for proper slot machine chair placement." He further opined:

15

> Waterview Casino should not have allowed a chair to exist in a place where it did not belong for a period of seven (7) minutes, without an employee moving the subject chair to its proper location. Because Waterview allowed a chair to exist in a location where it did not belong, the chair constituted an unsafe, dangerous condition. Additionally, Waterview did not provide any warnings to Mrs. Harris.

Dr. Lolli's report highlights a significant deficiency in this approach to seating management: the lack of formal, documented policies and training regarding chair placement. Although casino management expected employees to notice and relocate misplaced chairs, there were no written protocols or structured training programs to ensure consistency in hazard prevention. Dr. Lolli emphasizes that if a casino permits patrons to move chairs, it must also implement a strict policy ensuring that chairs are regularly monitored and returned to their designated locations. Dr. Lolli's report provides that by failing to adopt such policies, Waterview exposed its patrons to preventable risks.

¶31. Dr. Lolli's report also draws attention to relevant safety standards that Waterview Casino failed to meet. He references guidelines from the Occupational Safety and Health Administration (OSHA) and the National Institute for Occupational Safety and Health, which emphasize the importance of maintaining hazard-free walking surfaces. These standards are "relevant to the issue of whether a party used reasonable care." *Babin*, 368 So. 3d at 373 (¶31). We have previously held:

> OSHA regulations are not admissible to show negligence on the part of the defendant. However, Mississippi Rule of Evidence 105 provides that evidence not admissible for one purpose may be admissible for another purpose provided a proper limiting instruction is given. The Mississippi Supreme Court has held that OSHA regulations were not admissible to show negligence but could be used as a measure of reasonable care consistent with industry standards.

16

*Id*. (quoting *Fairley Constr. Servs. Inc. v. Savage*, 265 So. 3d 203, 212 (¶35) (Miss. Ct. App. 2019)). Dr. Lolli explains that while carpeted areas generally provide better slip resistance, the transition between carpet and hard flooring can create dangerous conditions, particularly when objects such as chairs are improperly positioned. Waterview's failure to account for these hazards—despite its knowledge that chairs were frequently moved—further demonstrates a lack of reasonable care in ensuring a safe environment for its guests.

¶32. Ultimately, Dr. Lolli's expert testimony creates a question of fact as to whether Waterview had a duty to take reasonable steps to prevent foreseeable hazards caused by misplaced chairs, particularly given its policy of allowing patrons to move them. He concludes that Waterview breached this duty by failing to implement adequate safety protocols, failing to train employees on hazard recognition and response, and failing to promptly address an obvious risk that directly led to Harris' injury. Waterview failed to present any evidence or expert testimony to refute Dr. Lolli's findings and opinion.

¶33. I find that the circumstances surrounding the chair are akin to those involving the baby gate in *Georgen v. Estate of Brown-Barrett*, No. 2023-CA-00344-COA, 2024 WL 4209619 (Miss. Ct. App. Sept. 17, 2024), *reh'g denied* (Jan. 14, 2025), *pet. for cert. filed* (Jan. 27, 2025), where the plaintiff, while staying at her friend's home, tripped over a wooden gate propped up against the doorway between the kitchen and the living room. *Id*. at *1 (¶3). The gate was unexpectedly placed, which created a tripping hazard. When the plaintiff attempted to step over the gate, it fell—tripping her and causing her to fall and suffer injuries. *Id*. at *4 (¶¶20-22). We relied on comparable facts in *Keckley v. Estes Equipment Co.*, 276 So. 3d

1230 (Miss. Ct. App. 2018). In *Keckley*, a customer sued a convenience store after tripping over a piece of yellow caution tape as she walking toward the store's entrance and attempted to step over a piece of yellow caution tape. She tripped when a gust of wind blew the tape up and created a "tripwire." *Id*. at 1234 (¶6). In those cases, the dangerous condition arose because of the altering of the objects—the propped-up gate or the windblown tape—transformed their ordinary, original state into a hazardous condition. There was no evidence that there had been a similar incident that foreshadowed the injuries of either plaintiff. Similarly, as in *Keckley* and in *Georgen*, a jury could find that the misplaced chair on an uneven, transitional floor transformed into a dangerous condition, especially when left unattended and unmoved by security or staff.

¶34.  Harris also contends that the misplaced chair remained in the area long enough to impute constructive knowledge to Waterview. "If the dangerous condition was created by someone not associated with the operation of the store, the plaintiff must produce evidence demonstrating that the operator had actual or constructive knowledge of the condition." *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996) (citing *Downs v. Choo*, 656 So. 2d 84, 86 (Miss. 1995)). "Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence." *Hearn v. Square Prop. Inv.*, 297 So. 3d 292, 296 (¶14) (Miss. Ct. App. 2020). Several slot attendants and waitresses passed by the chair and failed to move it to its proper location. Wilson admitted that the property was being constantly monitored with over 450 security cameras, which were recording at all

18

times. Moreover, Wilson admitted that if the security guard, who was standing near the misplaced chair, was "paying attention," he either saw or should have seen the chair out of place. Waterview's staff had constructive notice of the misplaced chair, as it remained in an unsafe position for approximately seven minutes in a well-trafficked area. Given the constant movement of slot attendants, housekeeping staff, and security personnel throughout the gaming floor, a reasonable inspection would have revealed the chair's improper placement. Dr. Lolli's report emphasizes that employees are expected to patrol assigned zones and address safety concerns, yet no staff member took corrective action despite the chair being visibly out of place and positioned unevenly between carpet and the hard tile. Waterview's failure to identify and remedy this dangerous condition within a reasonable period demonstrates a lack of reasonable care, further supporting the conclusion that summary judgment was improperly granted.

¶35. We must keep in mind that "[w]hen doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial on the merits." Our Supreme Court has held:

> [S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried . . . . [I]t cannot be used to deprive a litigant of a full trial of genuine fact issues.

*Kilhullen v. Kan. City S. Ry.*, 8 So. 3d 168, 174 (¶14) (Miss. 2009). As held in *Keckley* and followed in *Georgen*, "it is not our duty to weigh the competing evidence; it is our duty to determine if there is conflicting evidence for trial," *Keckley*, 276 So. 3d at 1241 (¶26), and "[i]f the undisputed facts can support more than one interpretation, then this Court, will not

hesitate to reverse and remand for a trial on the merits." *Georgen*, 2024WL 4209619, at *5 (¶26). Harris' testimony, the video, and Dr. Lolli's report provided sufficient evidence to create a genuine issue of material fact regarding whether the casino exercised reasonable care in maintaining a safe gaming area for its patrons. I find that the court erred in granting summary judgment in favor of Waterview. Therefore, I respectfully dissent.

**CARLTON, P.J., AND McDONALD, J., JOIN THIS OPINION.**